Nov. Term,<br>1855.<br><br>Cross<br>v.<br>Hepner.

---

Cross, Administrator, v. Hepner and Others.

A deed of conveyance taken upon a loan of money, with an accompanying agreement that the land shall be reconveyed upon payment being made, operates as a mortgage.

An agreement to receive the rents and profits of land for a term of years, for the use of money, will not be held usurious from the fact merely that the rents and profits are shown to have been of greater value than six per cent. per annum on the sum borrowed.

To render the agreement usurious, it must appear that there was an intention to evade the statute.

A lender of money took a conveyance of the borrower's land, and at the same time executed an agreement in which it was stipulated that he was to receive

---

*Note.*—The opinion in this case was delivered at the *November* term, 1852; but the printing of it was deferred by reason of a petition for a rehearing, which was not disposed of until this day. Having been overruled, the opinion is here inserted.

Nov. Term,
1855.

CROSS
v.
HEPNER.

the rents and profits till the money fell due, and that upon full payment
the land should be reconveyed, &c.  *Held,* that after the money became due,
the possession of the land by the lender or his assigns was that of mort-
gagees in possession, and that in ascertaining the amount due to him, the
rents and profits due to the borrower since the money became payable,
should be ascertained and deducted, &c.

*Wednesday,
December 26.*

APPEAL from the *Parke* Circuit Court.

SMITH, J.—This was a suit in chancery, commenced by
*Cross*, administrator of *George Saxton*, to subject certain
real estate to the payment of the debts of the intestate.
The material facts bearing upon the questions involved
are as follows:

On the 2d of *March*, 1840, *Saxton*, the intestate, loaned
to *Eli Hepner* 950 dollars, taking from him a note for the
payment of that sum five years after date.   There was no
stipulation in the note for the payment of interest.

On the same day, *Hepner* and wife conveyed to *Saxton*
the undivided half of a tract of land, by an absolute deed;
and *Saxton* executed a bond for the reconveyance of the
land to *Hepner*, on the payment of the note above men-
tioned, with all interest accruing before such payment.   It
is recited in the bond that the deed was made to *Saxton*
for the purpose of securing the payment of the note, and
that, by a special agreement between the parties, *Hepner*
was to have the rents and profits of ten acres of the land
during said period of five years.

The parties, also, at the same time, executed another
agreement in writing, by which it was stipulated that
*Saxton* was to have the rents and profits of the land con-
veyed to him, for five years, in lieu of interest on the note
for 950 dollars, except the ten acres reserved by the recital
in the bond.   It was also stipulated that *Hepner* should
open a lane and make certain fences upon the land in
question, and that *Saxton* should erect certain buildings
for which *Hepner* was to pay him what they were reason-
ably worth.

*Saxton*, in the year 1842, conveyed the same to his son
*John*, who, during the same year, conveyed it to his bro-
ther *Gersham;* but these conveyances were voluntary, and

fraudulent as regards creditors. No question is made respecting them.

The defence made by *Hepner* is, that the agreement was usurious, because the rents and profits of the land were worth more than the interest of 950 dollars, and that the principal had been fully paid by said rents and profits.

The rents and profits of the land thus mortgaged to *Saxton*, and which thus came into his possession, were variously estimated by a large number of witnesses, whose depositions were taken. An average of their estimates makes these rents and profits worth about 120 dollars per annum.

The Court, upon the hearing, found that the deed of *Hepner*, with the accompanying agreements, was a mortgage to secure the payment of the note for 950 dollars; and the deeds to *John* and *Gersham Saxton* were declared void. Thus far the decree is right. The Court below also decreed that the agreement that *Saxton* should have the use of the rents and profits for five years, for the use of the sum loaned by him, was usurious, because they were worth more than the legal rate of interest upon that sum; and finding that the rents and profits were worth 120 dollars per annum, and that, estimating them at that value, the principal loaned, or the sum of 950 dollars, without interest, had been paid, the debt was decreed to be extinguished and the bill was dismissed.

This latter portion of the decree can not be sustained. It appears to be founded on the supposition that an agreement to pay, by giving the use of other property for a period of time, for the use of a sum of money, is necessarily usurious, if a majority of the persons residing in the neighborhood should be of opinion that the rents and profits of such property are worth more than the legal rate of interest upon the sum loaned. If that was the case, an agreement to give a larger sum of money than the legal rate of interest for the temporary use of other property, would be liable to the same objection; and all such contracts might be deemed usurious, if the lessor or bailee should agree to give more than, in the opinion of his

Cross
v.
Hepner.

neighbors, would be equivalent to the legal rate of inte-
rest upon the value of the property leased or bailed.

Our statute upon the subject of usury prohibits the
taking of any greater sum, or greater value, than at the
rate of six per centum per annum for the loan or forbear-
ance of either money or other property, and it is as much
usury to give and receive more than six dollars per annum
for the use of each hundred dollars' worth of other pro-
perty, as to give and receive a larger sum for the use of
each hundred dollars in money. But it could not have
been the intention of the law, to deprive the parties to
such contracts of the right to put their own estimate upon
the value of the property in question, or to prevent their
own agreement as to such value from being binding, if
it is made in good faith, and without any intention of
evading the prohibition against usury.

In the present case, there is not the slightest evidence
of an intention to evade the statute against usury, except
the single fact that a majority of the witnesses stated that,
in their opinion, the rents and profits of the farm were
worth considerably more than the legal rate of interest
upon the sum of money loaned. These witnesses, how-
ever, varied very much in their estimates, some of them
fixing the value of the rents and profits at a sum about
equal to the lawful interest. Taking into consideration
that the parties themselves must be regarded as the most
competent persons to determine what was the actual value
of the lands, or of their use for a term of years, at the time
the contract was made, we think the evidence given was
not sufficient to authorize the conclusion that the agree-
ment was not made in good faith.

We are also of the opinion that after the expiration of
the five years for which the contract was made, *Saxton*
and his representatives should be regarded as mortgagees
in possession of the undivided interest of *Hepner* in the
land in question, in common with the other joint tenants,
so long as they continued in such possession. In order,
therefore, to render the proper decree in this suit, the Court
should have ascertained the time during which such pos-

session continued, and the proportion of the rents and profits to which *Hepner* was entitled during that period as mortgagor of an undivided interest, and as an authorized agent to receive the proportion which would be due to some of the other joint tenants. The sum thus found should have been deducted from the amount of the note, with interest from the time it became due until the decree was rendered.

There is some evidence that *Hepner* acted as agent for two of the other joint tenants while *Saxton* was in possession, but for what length of time does not clearly appear. Neither does the evidence fully show how long *Saxton* or his representatives continued in possession of the mortgaged premises. It may be necessary that additional proof should be heard as to these points.

*Per Curiam.*—The decree is reversed with costs. Cause remanded, with instructions to the Circuit Court to hear such additional proof as may be necessary, and to render a decree in conformity with this opinion (1).

*J. A. Wright, E. W. McGaughey, J. Morrison, C. A. Ray* and *J. T. Morrison,* for the appellant.

*S. B. Gookins* and *A. L. Roache,* for the appellees.

(1) Gookins, J., having been concerned as counsel, was absent when the petition for a rehearing was considered.