Clarke v. Irwin.

# THE STATE OF NEVADA EX REL. ROBERT M. CLARKE v. EDWARD IRWIN.

CONSTITUTIONALITY OF WHITE PINE COUNTY ACT. The Act creating the County of White Pine and providing for its organization (Stats. 1869, 108) is not in conflict with sections twenty, twenty-one, or thirty-two, of article four of the Constitution.

PRESUMPTION OF CONSTITUTIONALITY OF STATUTES. The power of determining whether a given statute is repugnant to the principles of the Constitution with which it is alleged to conflict belongs to the judiciary, and their decision is conclusive; but in all cases of doubt, every possible presumption and intendment will be made in favor of the constitutionality of the act in question.

"LOCAL" AND "SPECIAL" STATUTES. A "local" act is one operating over a particular locality instead of over the whole territory of the State; a "special" act is one operating upon one or a portion of a class instead of upon all of a class.

ACT ORGANIZING NEW COUNTY LOCAL AND SPECIAL. The White Pine County Act (Stats. 1869, 108) as it refers to only one new county and its organization, instead of to all new counties, and to those only of a class or whole, occupying or proposing to occupy such county, is a local and special act.

CONSTITUTIONAL CONSTRUCTION—ORDINARY MEANING OF WORDS. Words used in a Constitution, unless qualified so as to alter their ordinary and usual meaning, must be received in such meaning.

DEFINITION OF WORD "ELECTED." The word "elected" in its ordinary signification carries with it the idea of a vote, generally popular but sometimes more restricted, and cannot be held the synonym of any other mode of filling a position.

MEANING OF "ELECTION" AND "ELECTION BY THE PEOPLE," IN CONSTITUTION. The words "election," in section twenty-six, and "election by the people," in section thirty-two, of article four of the Constitution, contemplate the same mode of election and imply a popular vote.

WHITE PINE COUNTY ACT DOES NOT "REGULATE ELECTIONS." The Act creating White Pine County and providing for its organization (Stats. 1869, 108) does not regulate the election of county and township officers, and is therefore not repugnant to section twenty, of article four of the Constitution.

MEANING OF "APPLICABILITY OF GENERAL LAWS" IN CONSTITUTION. A general law to be "applicable," in the sense in which the word is used in section twenty-one, of article four of the Constitution, must answer the just purpose of legislation, that is, best subserve the interest of the people of the State, or such class or portion as the particular legislation is intended to affect.

ELECTION OF WHITE PINE COUNTY OFFICERS. The White Pine County Act (Stats. 1869, 108) does not violate section thirty-two, of article four of the Constitution, requiring county officers to be elected by the people.

APPOINTMENTS TO NEW COUNTY OFFICES OR VACANCIES. The Constitutional provision requiring county and township officers to be elected by the people,

(Art. IV, Sec. 32) does not apply to cases of emergency or special occasion, such as the creation of a new office or a vacancy.

POWER OF GOVERNOR TO APPOINT TO VACANCY. Before the Governor can exercise the appointing power of filling a vacancy (Const., Art. V, Sec. 8) two things must concur; there must be a vacancy and no provision made by the Constitution or any existent law for filling the same.

POWER OF LEGISLATURE TO FILL NEW OFFICES. The White Pine County Act (Stats. 1869, 108) created the new office of Sheriff of White Pine County, and appointed Irwin to the office: *Held*, that if there was no vacancy, the Legislature had the power to appoint; if there was a vacancy, the act creating the office and occasioning the vacancy filled it.

"VACANCY" IN NEW OFFICE. Where a new office is created and no person appointed to fill it, there is a vacancy.

MEANING OF "VACANT" IN CONSTITUTION. There is no technical or peculiar meaning in the word "vacant," as used in section eight, of article five of the Constitution; it means empty, unoccupied, without an incumbent; and it applies to new offices never filled, as well as to old ones vacated by death, resignation, or otherwise.

LEGISLATIVE POWER TO DECLARE WHAT SHALL OPERATE "VACANCY." Though the Constitution provides in some instances what shall operate a vacancy in office, such as absence of judicial officers, etc., this does not prohibit the Legislature from enumerating other causes.

POSSIBLE ABUSE OF LEGISLATIVE POWER. The possible abuse of legislative power is no argument against either its existence or appropriate exercise.

APPOINTMENT BY BOTH LEGISLATURE AND GOVERNOR. By the White Pine County Act (Stats. 1869, 108) Irwin was appointed Sheriff of that county, and the Governor granted him a commission as such: *Held*, whether the appointing power resided in the Legislature or in the Governor, Irwin was lawfully such Sheriff.

APPOINTMENT TO TAKE EFFECT AT FUTURE DAY. An appointment to a new office to take effect at a future day, when the act creating such office is to go into effect, is a good appointment.

INFORMATION in the nature of *quo warranto*, to the Supreme Court.

The Act creating the County of White Pine and providing for its organization (Stats. 1869, 108) was passed by the Legislature on February 23d, 1869, and afterwards became a law by remaining in the hands of the Executive more than five days after its passage without his disapproval. It took effect on April 1st, 1869, since which time Irwin had been holding and exercising the functions and duties of the office of Sheriff of the new county, having in March received a commission as such officer from Governor Blasdel,

to take effect on 'April 1st, 1869, and be in force thereafter until the first Monday in January, 1871.

The information was filed April 16th, 1869.

*Thomas Wells*, for the State.

I.  Though we admit new counties may be created, and organized, we claim there are in the fundamental law of this State, strong and peremptory restrictions as to when and under what circumstances they may be created, and the machinery of their governments set in motion.  Such counties must be systematized, so as to conform to the uniform system of county governments throughout the State.  (Const., Art. IV, Secs. 20, 21, and 25.)

In this view White Pine County is not now, and cannot be constitutionally organized—because, first, it has not nor can, at present, have a district judge of its own ; and, secondly, it cannot have, so to speak, a joint interest in a Judge, in common with another county, for which other county *only* he was elected.  (Const., Art. VI, Sec. 5 ; 32 Cal. 140 ; 21 Cal. 415.)

Again, the Legislature cannot divest vested rights.  In 1866, it made Lander County *alone* the Sixth Judicial District, and in so doing, it said to the people of Lander, that for four full years next after January 1st, 1867, they should have the *entire* time and services of the man they should choose as District Judge ; and to the man chosen, it said, that for the compensation fixed, he should hold Court and discharge other judicial duties at *one*, and only one county seat, during the four years.  The contract was mutual, for a valid consideration, and may be enforced, unless the Judge die, resign, or be removed.  While therefore Judge Beatty holds, as now he holds, the office of Judge of the Sixth Judicial District, the county of White Pine can have no District Court.  It is therefore not in possession of that system of government which prevails in all other counties of the State, therefore is not constitutionally organized ; and the county not being a county *de jure*, has no legal officers.

II.  But if the county be legally and *de jure* a county, respondent is not the legal and *de jure* Sheriff.  His appointment by the Legislature gives no indefeasible tenure, for there was, when he was so appointed, no law in force giving such appointing power to the

Legislature. His appointment and commission by the Executive are not according to section eight, article five, of the Constitution, and sections forty-one, and forty-nine, of the Act of 1866, 238; nor was there any law in force creating the county when the Governor appointed him. And further, the Constitution does not contemplate an original filling of any county office by appointment. (Const., Art. IV, Secs. 26 and 32.)

The Legislature cannot appoint county officers under the section of the Constitution last cited. The Legislature is required to provide by law for the election of all necessary county officers. These requirements are strictly mandatory, and ignore and cut off the original filling of them, in any other way than by election. *Expressio unius, exclusio alterius*, applies, for if the Legislature may adopt another mode than election for one, it may for all; if it may appoint for one or two years, it may for any and all time; and would be at liberty to repeal existing laws requiring elections by the people, pass no new law upon the subject, and at each session appoint county officers for each county, to serve until their successors were again in like manner appointed. (14 Wis. 163; 3 Brevard, 500; 6 Cal. 41; 29 Cal. 450; 34 Cal. 450; 3 Nev. 173; 2 Cal. 213; 34 Cal. 470; 30 Cal. 680; 10 Ohio, 509.)

An office that never had an incumbent does not become vacant, any more than a vacancy *happens* in the office of U. S. Senator, when it is made to exist because a State is originally admitted into the Union. An office cannot *become* vacant, which never had an incumbent in it, any more than a vacancy can *happen* in an office which never had an incumbent in it. What can cause an office to *happen* to be vacant? Not the fact that it was never filled, but the death, removal, or resignation of the incumbent, before the legal expiration of his term. What can cause an office to *become* vacant? Not the fact that it was never filled; but the death, removal, or resignation of the incumbent, before the legal expiration of his term. If the framers of the Constitution (Art. V, Sec. 8) intended the Executive to fill an office originally by appointment, they would not have employed language, the common force and acceptation of which is so utterly at variance with the meaning intended and the power sought to be conferred by it; for certainly the use of the

words " the next election and qualification," necessarily raises the presumption that, for such office, there *had been* at least one previous election and qualification.   (See Sec. 1555, 2 Story on Const. ; 5 Ind. 1 ; 10 Ind. 62.)

Again, by the Constitution, (Schedule, Sec. 22) if the Legislature create a new judicial district, the office of Judge thereof can originally be filled only by election by the voters of the district at the next general election after the creation thereof.   This undoubtedly being true, how can a new county be created and organized, with a system of government *uniform*—like that of other counties—at a time when it cannot possibly have a District Judge or Court ?   Without them how could the public revenue, for the State and the new county, be collected ?   (See 7 Ohio, 546 ; 19 Ind. 401 ; Const'l Debates, 702, *et seq.*)

IV.   The White Pine County Act is unconstitutional when tried by sections seventeen, twenty, and twenty-one of article four of the Constitution.   The purview of the Act as expressed in the title is " the creation and organization of White Pine County " ; and *that* only can be the subject legislated upon in the Act, save that matter properly connected with that *one* subject, may be put in.   Again, as special legislation the Act is plainly inhibited, for that new counties can be created and organized under general laws, there is not a shadow of a doubt.   (See also 12 Ind. 640 ; 14 Ind. 239, 305 ; 11 Ind. 199 ; 5 Ind. 4 ; 8 Ind. 217 ; 22 Ind. 461 ; 9 Ind. 363.)

*Mesick & Seeley,* for Respondent.

I.   The spirit and language of the Constitution (Art. VIII, Secs. 1, 8, and 10) clearly indicate that the framers of that instrument intended, as the nature of the case itself seems to require, that new counties might and should be organized by special enactment.   For otherwise, counties would have been included within the terms of section eight with towns and cities, which alone are there required to be organized by general laws.   The omission of counties from the provisions of section eight appears to have been made *ex industria* by the framers of the Constitution.   (*People* v. *Morrill,* 21 Wend. 563.)

II.   The thing which is complained of by the relator, namely, the filling of the county offices by the Legislature or by its direction made in the act of creation, was the exercise of a power not only not prohibited by the Constitution by any express provision, but a necessary adjunct of such creative power for making such municipal corporation operative for governing the county and performing its corporative functions until an election could be had under the general laws, and so prevent the anomaly of having a county without a county government.   It is manifest in the nature of the thing that the corporate entity must precede the exercise of any corporate privileges or powers by the corporators.   An interval of time must elapse between the two things.   During this period of intervening time, the county offices must be filled otherwise than by an election by the people, or not at all.   Nor can it be said that the government so organized preliminary to the exercise of the right of election by the people is in contravention of the constitutional direction that county officers shall be elected by the people.   Such direction was undoubtedly intended as part of the *general* system of county government and of filling county offices, and in no way intended for or adapted to the emergencies and special occasions which might give birth to new counties and bring them in a position to fulfill their duties and perform their functions under the general laws of the State.   (*Hedley* v. *The Board of Commissioners*, 4 Blackf. ; *People* v. *Fisher*, 24 Wend.; *Stocking* v. *The State*, 7 Ind. 329.)

III.   A previous filling of the county offices is indispensable to the holding of an election by the people.   It would be idle to assume that anybody now in office by virtue of a popular election held in some other county could, against the legislative will, by virtue of such election conduct the affairs of this new county.   (*People* v. *Morrill*, 21 Wend. 563.)   It would be absurd to say that an election by the people to fill the offices of this new county in the year 1870, or at any other time, can be held unless those offices should first have been filled.   A registration of voters, the preliminaries of making precincts, appointing election officers and keeping a record of them, must precede such election ; the maintenance of the peace, protection of the voters and the ballot-box, must attend

the election; and a proper counting of the votes and record and proclamation of the result, with the granting of commissions and giving of bonds and taking of oaths of office, must intervene the election and the installation of any officer elected by the people.

IV.    The appointment of the officers by the Legislature does not infringe upon either the popular right of election or the executive right of appointment.    A popular election could not be held, and the Constitution confers the right of appointment on the Executive only in cases when there is no law in existence for filling the offices. But here, in the law creating the county, provision is made by the creative power itself for filling the offices; and the creating includes the power of organizing, and the Legislature might as well itself appoint the various officers as delegate the power of making such appointments.    It is idle to say that such appointments are invalid because the law making them is not general.    It is general for White Pine County and the people of that county.    It is not needed elsewhere or at any other time.    If it be unconstitutional as a violation of the provisions of the Constitution in respect to special laws, it is difficult to see that any case can arise justifying the enactment of a special law.

V.    As to what constitutes a vacancy in office, we submit that the construction of language adopted by the Court in the case of *Stocking* v. *The State*, (7 Indiana, 329) is to be preferred to the hypercriticism and refinements sought to be enforced in the case of the *State* v. *Meesmore*, (14 Wisconsin).    It seems to us that the language " when from any cause any office shall become vacant," is sufficiently comprehensive to include the case of a vacant office never filled.    One of the meanings given by lexicographers to the word " become," is, " to be;" and it is not difficult to conceive that the framers of the Constitution used the term with that meaning.

*C. J. Hillyer*, also for Respondent.

Only two objections raised seem to merit reply: First, that the law is obnoxious to the constitutional provision respecting special legislation; and, second, that it violates the provisions requiring the officers to be elected by the people.    As to special legislation, it is clear that the law is not embraced within any of the enumerated

prohibited subjects of section twenty, article four. It is not a law "regulating county and township business," nor "regulating the election of county and township officers," nor "providing for opening and conducting elections," for the reason that it makes no provisions about elections or county or township business; nor does it violate section twenty-one. The argument is that all or some of the provisions of the Act might have been the subject of general legislation, and that, therefore, it was unconstitutional to make them applicable to one special locality. If this be so, then there is an end of all discriminating, and therefore of all beneficial legislation. It might as well be all done by a machine. If this be so, the law incorporating the City of Virginia, the Act to aid the Virginia and Truckee Railroad, the Act for the relief of C. N. Noteware, the Sutro Tunnel Act, the Acts fixing the time of elections in Virginia, Gold Hill, and Austin, and the law fixing the terms of Court of Esmeralda County, are all unconstitutional.

It is plain, however, that the section referred to is purely directory, as clearly so as the clause prescribing what the title of a law shall embrace. (4 Cal. 388; 10 Cal. 306.) Its only meaning is, that the Legislature shall not enact laws which discriminate unjustly and oppressively, and that when the circumstances are the same the law shall bear equally. (17 Cal. 554.)

By the Court, WHITMAN, J.:

This is an information by the Attorney General of the State of Nevada in the nature of a *quo warranto*, to test the right of Edward Irwin to hold, exercise the duties, and receive the emoluments of the office of Sheriff of White Pine County.

The facts set forth are not denied; and it appears, that at the last session of the Legislature, a bill was passed, entitled "An Act to create the County of White Pine, and provide for its Organization." Certain parties were named in the bill as county officers, to hold until the next general election, Irwin was designated as Sheriff. Subsequent to the passage of the bill, and during the month of March, 1869, the Governor of the State commissioned Irwin as Sheriff; such commission "to take effect April 1st, 1869, and to be in force thereafter until the first Monday in January, A.D. 1871.

Clarke *v.* Irwin.

On, or soon after the first day of April, Irwin qualified in the statutory manner, and is now acting as Sheriff.

Section eight of the Act is as follows: "The provision of this Act shall take effect, and be in full force, from and after the first day of April, A.D. 1869, at which time said county shall be duly organized."

The information avers that the Act is "unconstitutional and void." The specifications upon argument are:

First. Because it is contrary to that part of the Constitution of the State which prohibits the Legislature from passing local or special laws, regulating the election of county and township officers.

Second. Because it is obnoxious to that part of our Constitution which requires, that in all cases where a general law can be made applicable, all laws shall be general and of uniform operation throughout the State.

Third. Because it violates that part of our Constitution which requires county officers to be elected by the people.

Other objections are made by counsel for the State, which, if noticed, would involve the discussion of matter not properly before this Court, wherefore the consideration of this case will be confined to the above objections, with their necessary incidents.

The clauses of the Constitution referred to read thus: Art. IV, Sec. 20. "The Legislature shall not pass local or special laws in any of the following enumerated cases, that is to say:    *    *    *
'Regulating the election of county and township officers.'  *    *
Sec. 21. 'In all cases enumerated in the preceding section, and in all other cases where a general law can be made applicable, all laws shall be general and of uniform operation throughout the State.'
Sec. 32. 'The Legislature shall provide for the election, by the people, of    *    *    *    Sheriffs,    *    *    and other necessary officers, and fix by law their duties and compensation.' "

The question presented is grave, not only in its immediate, but its ultimate consequences, and should be so decided as to settle the meaning of the constitutional provisions quoted or involved definitely, with reference to the future as well as the present, and the decision thereon should be unbiased by any considerations of policy or particular emergency. Endeavor will be made to that end.

Clarke *v.* Irwin.

For forty years it has been held in these United States, "that the power of determining whether a given law is repugnant to the principles of a Constitution, with which it is alleged to conflict, belongs to the judiciary, and that their decision is conclusive." While the power is confessed, it is always exercised in subjection to certain rules of decision, which have been announced in an unbroken current of opinion, from the State Courts of last resort, and the Supreme Court of the United States, the substance of which is thus well expressed by Mr. Sedgwick : "The leading rule in regard to the judicial construction of constitutional provisions is a wise and sound one, which declares that in cases of doubt every possible presumption and intendment will be made in favor of the constitutionality of the act in question, and that the Courts will only interfere in cases of clear and unquestioned violation of the fundamental law. It has been repeatedly said, that the presumption is, that every State statute, the object and provisions of which are among the acknowledged powers of legislation, is valid and constitutional, and such presumption is not to be overcome unless the contrary is clearly demonstrated." Thus guided, attempt will now be made to construe the constitutional provisions before cited.

Is the Act a local or special law ? Mr. Sedgwick makes "the leading division (of statutes) to be into ' public or general, and private or special.' Public or general statutes are, in England, those which relate to the kingdom at large. In this country they are those which relate to or bind all within the jurisdiction of the law-making power, limited as that power may be in its territorial operations, or by constitutional restraints. Private or special statutes relate to certain individuals or particular classes of men."

The twenty-second section of article fourth of the Constitution of the State of Indiana is verbatim with that of Nevada, save that it makes more exceptions to special legislation. Deciding upon a clause of such section it is said : "What is a special Act ? It is such as at common law the Courts would not notice, unless it were pleaded and proved, like any other fact." (*Hingle* v. *The State,* 24 Ind. 34.) In Wisconsin distinction is made between the meaning of the word general, when used in opposition to the word private, and when used in distinction to the words special or local.

It is said : " But it undoubtedly has other meanings. It is used as contradistinguished from local, and then it would mean operating over the whole territory of the State, instead of in a particular locality. It is used also as contradistinguished from special, and then it means relating to all of a class, instead of to one, or a part of that class." ( *Clarke* v. *The City of Janesville,* 10 Wis. 180.) The converse of the latter definition will properly give the meaning of the words local and special, as used in the portion of the Constitution cited, and under such definition it will be seen that the Act in question is clearly local and special, as it refers to only one new county and its organization, instead of to all new counties ; and to those only of a class or whole, occupying, or proposing to occupy, such county. Being, then, a local and special law, is it one " regulating the election of county and township officers ? "

When words are used in a Constitution, unless so qualified by accompanying language as to alter their ordinary and usual meaning, they must be received in such meaning. The word " elected," in its ordinary signification, carries with it the idea of a vote, generally popular, sometimes more restricted, and cannot be held the synonym of any other mode of filling a position. ( *Magruder* v. *Swann,* 25 Md. 214.) This is clearly the sense of the use of the word in the clause referred to, especially when taken in connection with sections twenty-six and thirty-two referring to the same subject. Section thirty-two has been previously quoted. Section twenty-six reads thus : " The Legislature shall provide by law for the election of a Board of County Commissioners in each county." Now, although in one of those sections the Legislature is commanded to provide for an " election," and in the other for " an election by the people," it will hardly be contended that the same mode of election was not contemplated in both cases; and that for the reason that the ordinary meaning of the word "elected " implies a popular vote, unless otherwise qualified. When, then, the Legislature is prohibited from passing local or special laws " regulating the election of county and township officers," the prohibition runs against making distinctions between counties or townships in the matters of the popular election of their officers. In the Act under consideration no such attempt is made ; the election of county and township

9

officers is left under the general election law, subject to all its provisions; when that law operates there is an election, and not until then; at such time the offices and officers are regulated thereby. The Act is not then liable to the first objection made.

Could a general law be made applicable? The briefs on the part of the State answer that question unhesitatingly in the affirmative; but there is more difficulty about it than is admitted therein. It is not denied that the Legislature has power to erect a county— that is, to define its territorial limits and boundaries by special act, and thereby to subdivide one or more old counties; because it is said such action is clearly a part of proper legislative power not prohibited, and no general law could in such case be made applicable. It would seem that a general law could as easily be made applicable to the mere erection of a new county, as in providing for its organization. A general law might be passed, that all counties having a certain population should be divided, or that all counties having a specified area of territory might be divided. Of course, it is no argument to suggest or prove an error in the proposition as to legislative right to erect new counties by special law, and the reference is made simply to draw attention to the fact that hardly any case could be found or imagined where a general law could not be framed which would, in default of one special, answer some part of the purpose intended to be accomplished by legislation. But would such a general law be applicable, is always the question. A law, to be applicable in the sense in which the words are evidently used, and their only proper sense in such connection, must answer the just purposes of legislation; that is, best subserve the interests of the people of the State, or such class or portion as the particular legislation is intended to affect. A general law could undoubtedly be passed regulating the organization of new counties, but it would be exceedingly difficult, if not impossible, to make such law applicable.

The creation of a new county is in itself an act ordinarily demanded by the emergency of the occasion; but such emergency may be present or prospective, and is rarely in any individual instance, surrounded by the same or similar circumstances as would characterize another. In one case a law which provided for filling

the offices at general election would answer the public necessity; in another, a provision for a special election would be appropriate; in another, that the officers of the county from whose territory a new one was formed, should act until the general election and qualification of officers might answer the purpose; but how evolve from these different schemes one which would be applicable to all, or even a majority of cases?

A partial illustration of the view sought to be expressed can be found in the state of facts probably prompting the legislation of last winter as to new counties. Thousands of people had centered in a portion of Lander County; immigration was on the increase; as usual in all newly-settled mining communities, there was a considerable number of lawless adventurers, and great demand on that and other accounts for immediate government. The county seat, the only place where county officers are obliged to keep offices, was distant more than one hundred miles. Here, then, was a case demanding immediate action.

On the other hand, immigration was tending to a point upon the Central Pacific Railroad and its vicinity, which would in all probability so increase before the next meeting of the Legislature, that a new county would there be a necessity.

For the first of these cases, the Legislature passed the present Act; for the second, " An Act creating the County of Elko, and providing for its Organization;" which county was placed generally under the charge of the officers of Lander County (Commissioners only being directed to be appointed, or named by the Governor) until it should appear in mode provided that a certain territory taken from Lander County contained more than a thousand registered voters, when an election was provided. If this number of voters did not exist by a certain time named, the county continued under the charge of Lander County officers, as above stated, until the next general election.

How frame a general law which would meet and be applicable to the different requirements of even these two cases?

It is suggested, that a newly-created county might and properly should remain in suspense, as to its ultimate and regular organization, until the general election next occurring after its creation; but

in this case, it might never be organized, because it does not follow that the new county being so in suspense, its territory would be governed by any officers previously elected in the same territory. The new county being created under the Constitution and general laws of the State, the ordinary county and township offices presently exist. They are separate and distinct offices, which cannot be held save by some one elected or appointed thereto; and a provision that any officer previously elected should fill them would be open to the objection of special legislation as urged by the State in the present case.

A general law that all new counties should, until the general election next ensuing after their creation, be officered by those elected to hold similar offices in the territory of which the new counties might be formed, would have suited the occasion of White Pine County, perhaps; but how would it answer in one composed of portions of Lander and some other, or how could such a law be made applicable to a new county carved out of several old ones; or in the absence of a law, which of the old counties, or who of the old officers, would have jurisdiction? A discussion of this question to some extent will be found in *The Republic* v. *McLean*, (4 Yeates, 499). And as to the effect of the creation of a new county upon officers of the old, residing in the new, in *The State* v. *Choate*, (11 Ohio, 516), and *The People* v. *Morrell*, (21 Wend. 563) all of which cases throw light upon the general proposition under consideration.

The organization of a county is so incident to its creation, and flows so naturally therefrom, that it partakes of the special proceeding which brings the county into existence to so great a degree, that it is difficult, if not impossible, to effect it without more or less of special legislation, in order to have the law applicable. A general election could not be held in a new county without special action, votes could neither be registered without registry agents, nor counted without County Commissioners and County Clerk.

Whether a general law could be made applicable to the different cases likely to arise is, to say the least, doubtful. The Legislature has by its action decided not; and although its primary right to decide must be governed by the ultimate power of the Court of

Clarke *v.* Irwin.

final resort to inquire into and decide the point.   (*Thomas et als.* v. *Board of Commis. of the County of Clay et als.*, 5 Ind. 4.) Yet it is impossible in the case at bar, for this Court to say that a general law could be made applicable to the organization of new counties ; and certainly it could not say, that the question is so free from proper and reasonable doubt, that there is a clear and evident violation of the Constitution in the passage of the Act under review ; but admitting its unconstitutionality as to this point, then by the creation of the · county a vacancy occurred, which the Governor was authorized to fill, as will be hereafter shown.   Irwin then holding by his appointment constitutionally made, his right to the office would not be affected.   The second objection must therefore fail.

Does the Act violate that part of our Constitution which requires county officers to be elected by the people ?   The clause referred to requires the Legislature to provide for such election ; that the Legislature has already done, in passing a general and uniform election law, applicable to all counties in the State; but, because an office is elective and must under general laws be always so filled, it by no means follows that it cannot be filled temporarily by other means ; and when the Legislature has provided generally and uni- formly for elections of county officers, all has been done which the Constitution commands in that regard ; the mandate does not apply to cases of emergency or special occasion, as the creation of a new office, or a vacancy.   To assert the contrary is to prove too much, as it would follow that in no case could an elective office be filled save by election.   This is true as a general rule, and under general laws; but the rule does not cover cases not falling under such gen- eral laws.   (*State of Nevada ex rel. Bull* v. *Washoe Co. Commis.*, 4 Nev.)   So it has been held under constitutional provision apparently more specific and mandatory than the one referred to.   In New York the Constitution declared, that " Sheriffs and Clerks of coun- ties shall be chosen by the electors of the respective counties once in every three years and as often as vacancies shall happen." Commenting thereon, Justice Bronson says :   " There must of necessity be an interval of time between the death, resignation, or removal of the incumbent, and the· filling of the vacancy by ·the

electors; and it is essential to the public welfare that some person should in the mean time discharge the duties of the office. The Legislature has provided that the vacancy shall be supplied by the people at the next general election after it happens, (1 R. S. 128, Sec. 8); and that in the mean time the duties of the office shall be discharged either by the deputy, or by a person appointed by the Governor, or by both of them. This space in which the office may not be filled by election can never exceed one year, and may sometimes amount only to a few days. How long it may happen to be, provided it do not extend beyond the next annual election, is a question, I think, fairly within the discretion of the Legislature. The language of the Constitution is not that the office shall be filled by election *in every possible case*, nor that a vacancy shall be supplied in that manner as *soon* as it happens; but the language is, that vacancies shall be supplied by election as *often* as they happen. That end is fairly attained by referring the matter to the people, at their next stated period for exercising the elective franchise." (*People* v. *Fisher*, 24 Wend. 219.)

Quoting this language, Denio, C. J., remarks: "This view is so reasonable as to command the assent of every person." (*People* v. *Snedeker*, 14 N. Y. 52. See also, *Hedley* v. *The Board of Commissioners*, 4 Blackf. 116.) The case of *The State* v. *Messmore*, (14 Wis. 163) cited by counsel for the State, so far as it touches the present question, was decided upon constitutional provisions different from ours, and upon the ground that the Legislature, in erecting new judicial districts, must be deemed to know, that no present necessity existed for an immediate appointment, and had always legislated according to the construction placed by the Court on the Constitution. Section seven of article seven provides, that the Circuit Judges shall be chosen by the qualified electors of their circuits respectively, and shall be so classified by the Legislature that one of them shall go out of office annually, for six years, and that thereafter, all Judges should be elected for six years. Section six provides, that in case of an increase of circuits the Judge or Judges shall be elected as provided in this Constitution. The case is hardly in point, and even if it was, could not be held, unless upon much clearer reasoning than it seems to contain, to over-

ride the authority of the cases cited from New York.  As it is taken then, the third objection to the Act cannot be sustained.

Incident thereto, however, comes the question of the filling of the county offices.  It is argued that the Legislature cannot fill, because the appointing power pertains to the Executive Department; and the case of *State* v. *Kennon,* (7 Ohio, N. S. 546) is cited in support of the position.  The decision in that case is probably correct; but it is based upon a constitutional provision entirely unlike any to be found in the Constitution of the State of Nevada. By such provision the appointing power was expressly taken away from the Legislature and given to the Governor, as a recital of the clause will clearly show :

" The election and appointment of all officers, and the filling of all vacancies not otherwise provided for by this Constitution or the Constitution of the United States, shall be made in such manner as may be directed by law; *but no appointing power shall be exercised by the General Assembly,* except as prescribed in this Constitution; and in the election of United States Senators, and in these cases the vote shall be taken *viva voce.*"

Under the foregoing provision the case above cited was decided— the Court holding that the law under consideration did not fall within the special exception ; and that, to use the language of one of the Judges, " appointing power by the General Assembly is thus cut up by the roots, except only in the special cases, in which it is expressly given by the Constitution itself."

In the Constitution of the State of Nevada, the appointing power of the Legislature is neither cut up by the roots, nor in any manner hampered, save where the Constitution itself, or the Federal Constitution, provides for filling a vacancy.  The former prescribes the mode of filling vacancies only as to State officers and members of the Legislature ; the latter, as to United States Senators and Representatives in Congress.  In every other case the power is in the Legislature, to be by it regulated by law, as is evident from the fact that no provision is made save as to vacancies; and as to these, the following language is used :

" When any office shall from any cause become vacant, and no mode is provided by the Constitution and laws for filling such

vacancy, the Governor shall have the power to fill such vacancy by granting a commission, which shall expire at the next election and qualification of the person elected to such office." (Const. Nev., Art. V, Sec. 8.)

Two things must then concur: there must be a vacancy, and no provision made by the Constitution, or no existent law for filling the same, before the Governor can exercise the appointing power. Now, if upon the creation of this new office, because it is such, as the office of Sheriff of White Pine County had no existence until the passage of the law creating the county, no vacancy occurred, the office remained to be filled by some power. The Governor had not that power, and there was no prohibition upon the Legislature, unless it exist in the constitutional provisions heretofore considered, and it has been seen that there it cannot be clearly found, as applicable to a case similar to the present; wherefore the office could be properly filled by the Legislature. If there was a vacancy, then the very law which created the county and occasioned the vacancy filled the same, and there was no such condition of affairs as section eight, article five, of the Constitution suggests; but upon this latter point it is unnecessary to express a decided opinion, for Irwin has not only the appointment of the Legislature, but the commission of the Governor, so if the case comes within the meaning of the section, he lawfully holds, if there can be a vacancy in a newly-created office, never previously filled.

There is some difference of judicial decision upon this question, and the State has cited cases claimed to show that the creation of a new office can never make a vacancy. The California cases conflict with each other, and do not meet squarely the precise point here presented. The case of *The State* v. *Messmore,* cited before, was as to the present question decided upon the following constitutional clause: " When a vacancy shall happen in the office of Judge of the Supreme or Circuit Courts, such vacancy shall be filled by an appointment of the Governor, which shall continue until a successor is elected and qualified; and when elected, such successor shall hold his office the residue of the unexpired term." The word "vacancy" is here so qualified by the last clause that the Court might well have expressed its opinion as claimed, but it went further and

Clarke *v.* Irwin.

attempted to criticise the opinion of *Stocking* v. *The State*, (7 Ind. 327) upon the assumption that the language of the Indiana Constitution was in all " material respects" like that of Wisconsin, and remarked that the " learned Judges of Indiana in their discussion of the question seem entirely to have passed over the language. of the section of their Constitution which authorizes the Governor to fill vacancies by appointment," Examination will show that both these statements are incorrect.

It is held in the case of Stocking that an appointment to fill a newly-created office was good under section eighteen, article five, of the Constitution, reading thus: " Sec. 18. When during a recess of the General Assembly, a vacancy shall happen in any office, the appointment to which is vested in the General Assembly, or when at any time a vacancy shall have occurred in any other State office, or in the office of Judge of any Court, the Governor shall fill such vacancy by appointment, which shall expire when a successor shall have been elected and qualified." This is the section said by the Wisconsin Court to be in all " material respects " like that of Wisconsin, when it lacks entirely any such qualification as is contained in the latter clause of the section quoted therefrom—" and when elected, such successor shall hold his office the residue of the unexpired term ;" which words force the construction that the vacancy spoken of could only exist, happen, or be where an office had been previously filled.

The language used by the Court of Indiana expresses the idea sought to be illustrated in this opinion, as to the meaning of the word " vacant," in the section under consideration from the Constitution of Nevada, so clearly and concisely, that it is adopted as part of this decision : " We lay no stress on the declaration of the Legislature that there was a vacancy in the office of Circuit Judge of the new circuit. If there was a vacancy, it existed independent of that declaration. If there was no vacancy, that body could not create one by a declaratory enactment. The vacancy flowed as a natural consequence of their doing what they had a right to do— to create a new circuit. There is no technical nor peculiar meaning to the word ' vacant,' as used in the Constitution. It means empty, unoccupied ; as applied to an office without an incumbent,

there is no basis for the distinction urged, that it applies only to offices vacated by death, resignation or otherwise. An existing office without an incumbent, is vacant, whether it be a new or an old one. A new house is as vacant as one tenanted for years, which was abandoned yesterday. We must take the words in their plain, usual sense. (2 R. S., 223, 339, and 341.) The emergency which created the office would imply that the vacancy in the office of Judge in the new circuit should be filled immediately. The eighteenth section, article five, provides that the Governor shall, by appointment, fill a vacancy in the office of Judge of any Court. We think this apppointment well made under that section." *Stocking* v. *The State*, 7 Ind. 327.) This case was sustained in *Rice* v. *The State*, (7 Ind. 332); *Driskell* v. *The State*, (7 Ind. 359) and *Collins* v. *The State*, (8 Ind. 350). So far, then, as the word vacant, in section eight, article five, is concerned, it applies as well to a new office as to one previously filled; but it is claimed that the laws of the State have declared what shall create a vacancy; the statute is not, cannot be, exclusive. The Constitution provides, in some instances, what shall operate a vacancy, as, in the case of judicial officers, an absence from the State exceeding three months; but this does not prohibit the Legislature from enumerating other causes. It has power so to do, and has done so; it could not properly provide that what the Constitution has said in any instance should make a vacancy, should not so do; but it may add as many other causes as it pleases, and it could not, by attempting to define the word " vacancy," limit the power of the Governor to fill a vacancy, as specified in section eight, article five, when the word applies as well to a new office as to one previously filled. It is said that frivolous or improper causes may be assigned; this may be so, and there may be no remedy: when the case arises it will be time to look for one; but to suggest the possible abuse of a power is no argument against either its existence or appropriate exercise.

The Legislature has already defined what shall constitute a vacancy in an office which has been before filled. Indeed, in subdivision five, of section thirty-five of the election law, it provides a cause which would apply to a newly-created office, if there had been an election therefor; but having done all this, does not pre-

clude further declaration on the subject.    That all cases should be provided for by general law, if the same can be made applicable, is true ; but this and similar cases would seem to properly fall within the contemplation of the Constitution as instances where no law had been passed, and then the power must be in the Governor to fill them.    While, therefore, it is not held that the Legislature could not properly name the county officers in the bill, nor that the case was one of vacancy which the Governor alone could fill, it is decided that if it fall in either category Irwin is lawfully placed.    If the Legislature had the power to nominate, he holds its appointment ; if there was no such power, or the power was improperly exercised, then the Governor had the appointment, and Irwin holds his commission.

The fact that the appointment was made by either Legislature or Governor before the first of April, cannot invalidate it ; both were made to take effect upon a future day.    Had the day never come, or Irwin died before, he held nothing under either appointment, the office was existent, but its duties were suspended until a time fixed.    (*The State of Ohio* v. *Charles McCallister*, 11 Ohio, 46.)

The portions of the Act examined are so independent of the remainder, that the conclusions reached upon their constitutionality determine this case.    No opinion is here expressed, nor intimation made, with reference to the part of the Act unexamined, as it would be idle to express an opinion, which could be no decision, for the reason that it was given with regard to matters not necessarily arising in the case.

As to that portion of the Act affecting Irwin, and of course officers in like circumstances, it is not unconstitutional, and judgment must be rendered for Irwin, that he is entitled to hold the office of Sheriff of White Pine County, as by him claimed.

It is so ordered.