[No. 1206.]

THE STATE OF NEVADA ex rel. J. V. B. PERRY, RELATOR, *v.* WILLIAM ARRINGTON et al., THE BOARD OF COUNTY COMMISSIONERS OF EUREKA COUNTY, RESPONDENTS.

CONSTITUTION—LEGISLATIVE POWER—PROHIBITIONS, LIMITATIONS AND RESTRICTIONS——It is the duty of courts, in construing the constitution, to ascertain the intention of those who framed the instrument, and of the people who ratified it. The legislature has the power to enact any law not prohibited by the constitution; but in seeking for limitations and restrictions courts must not confine themselves to express prohibitions. Negative words are not indispensable in the creation of limitations to legislative power. If the constitution prescribes one method of filling an office, the legislature cannot adopt another.

IDEM—ELECTION OF OFFICERS.—Under the provisions of the constitution of this state, all necessary state, county and township officers must be elected by the people of the locality immediately concerned.

IDEM—COUNTY ASSESSORS—EXTENSION OF TERM.—County assessors are necessary officers, within the meaning of the constitution, (Art. IV, Sec. 32), and must be elected by the people. The legislature has no power to extend the terms of such officers beyond the time for which they were elected, except temporarily in cases of emergency.

STATUTE UNCONSTITUTIONAL.—Section 2 of the statute of 1883, 123, extending the terms of county assessors beyond the time for which they were elected, is unconstitutional and void.

APPLICATION for *mandamus.*

The facts are stated in the opinion.

*E. R. Garber*, for Relator.

*Baker & Wines* and *Robert M. Clarke*, for Respondents.

By the Court, LEONARD, J.:

It is the official duty of the several boards of county com-

missioners of the state, to cause their clerks, at least twenty
days before any general election, to make out and deliver
to the sheriff of their county, or to the justice of the peace
of any county attached for judicial purposes, three written
notices for each election precinct, stating the time and place
when and where such election will be held, and the names
of the offices to be filled. (Stat. 1873, 198, sec. 4.) On
the twenty-fifth of August, 1884, at a regular meeting of
the board of county commissioners of Eureka county, re-
spondents, acting as such board, directed their clerk to issue
election notices for county and township officers in and for
Eureka county, to be voted for on the first Tuesday after
the first Monday in November, 1884, but in said notices
omitted the office of county assessor. Relator, a citizen of
the United States, a resident, qualified elector and tax-
payer of Eureka county, appeared before said board, and
in writing demanded that the office of county assessor be
inserted as an office to be filled at said election. Respond-
ents refused, and still refuse, to give any notice of the elec-
tion of said officer, on the ground that, by an act of the
legislature of the state, which became a law March 14, 1883,
the terms of the several county assessors of the state were
extended from two to four years; that by reason thereof,
there is no county assessor to be elected in said county for
the two years next ensuing the first day of January, 1885,
and that, therefore, a notice of the election of said officer
is not required or authorized by law. Prior to the last
session of the legislature, in 1883, the terms of county
assessors were fixed by law at two years, and the several
incumbents were elected at the general election of 1882 for
the period of two years. According to the statutes in force
at the time of their election, their terms of office would
have expired on the first Monday in January, 1885. But
the legislature of 1883 passed an act which provided that
there should be elected at the general election in 1886, an
every four years thereafter, in each county, one county
assessor, and that the terms of office of county assessors
then in office should expire on the first Monday in January,

1887. In other words, the legislature endeavored to extend, and, if the second section of the statute in question (Stat. 1883, 123) is valid, did extend, the terms of office of the several county assessors of the state two years beyond the time for which they were elected by the people.

It is claimed by relator that the legislature had not such power, for several reasons, but mainly because, under the constitution, the office of county assessor must be filled by an election by the people, and that the statute under consideration violates that right. On the contrary, it is urged by respondents that this is not a constitutional office; that it is purely of legislative origin and creation, and that, therefore, the legislature may do with it as it wills; that under the constitution the legislature has power to declare by law the tenure of the office, and that, consequently, it may extend the term to four years. In construing constitutions, the first and last duty is to ascertain the intention of the framers of the instrument, and of the people who ratified it. Courts are governed by the same rules, whether construing constitutions or statutes. It is undoubtedly the duty of courts to uphold statutes passed by the legislature, unless their unconstitutionality clearly appears, in which case it is equally their duty to declare them null. From an examination of the entire constitution does it clearly appear that the people intended to retain the right to elect the incumbents of the office of county assessor, and if they did, does the second section of the statute in question violate that right? We deem it unnecessary to pass upon the question whether this office is of constitutional or legislative origin; for whether it be one or the other, if, as we think, under the constitution, it must be filled by election by the people, no other method can be adopted. So, for the purposes of this decision, we shall admit that it was created by the legislature, and therefore, that the law-making power could abolish it, and adopt some other method of complying with section one of article X of the constitution, concerning taxation. But this admission by no means sustains the conclusion that the legislature has power to fill the office by

legislative or other appointment, or otherwise than by popular election, so long as the office exists.

We admit, also, that the legislature can perform any act not prohibited by the constitution; that, outside of constitutional limitations and restrictions, its power is "as absolute, omnipotent, and uncontrollable as parliament." But in seeking for limitations and restrictions, we must not confine ourselves to *express* prohibitions. Negative words are not indispensable in the creation of limitations to legislative power, and, if the constitution prescribes one method of filling an office, the legislature cannot adopt another. From its nature, a constitution cannot specify in detail and in terms, every minor limitation obviously intended. It follows that implied as well as express restrictions must be regarded, and that neither the legislature nor any other department of the government can perform any act that is prohibited, either expressly or by fair implication. (*People* v. *Draper*, 15 N. Y. 543; *Lowrey* v. *Gridley*, 30 Conn. 458; *People* v. *Hurlbut*, 24 Mich. 98.) Prohibitions implied, if they plainly exist in a constitution, have all the force of express prohibitions. For instance, it is declared in section 32 of article IV, that the legislature shall provide for the election by the people, of certain officers named. There are no negative words employed to the effect that the legislature shall not elect or appoint them, or provide for their election or appointment in some other way; still no one would claim that, a law providing for their election or appointment by a different mode would be constitutional. In fact, counsel for respondents admit that it would not be.

After a careful examination of the entire constitution, we are clearly of opinion that, the framers and the people intended that all necessary state, county, and township officers should be elected by the people of the locality immediately concerned. Such, in the main, was the method of choosing officers prior to the adoption of the constitution, and such has been the construction placed upon that instrument by the legislature, at least before the passage of the statute under consideration, and even according to this statute, the

same method is to continue after the expiration of two years. The constitution makes provision, in terms, for the election by the people of a governor, lieutenant governor, secretary of state, treasurer, controller, surveyor general, attorney general, superintendent of public instruction, clerk of the supreme court, justices of the supreme court, district judges, boards of county commissioners, members of the legislature, county clerks, recorders, who are *ex-officio* auditors, district attorneys, sheriffs, treasurers, surveyors, public administrators, justices of the peace, "and other necessary officers."

It will be noticed that this list includes all state officers whose offices were created by the constitution, and all at any time since or now existing, with the exception of state mineralogist, now abolished, and state printer, both of which were created by the legislature subsequent to the adoption of the constitution. It includes, also, all county officers by name, for whose selection, in any manner, constitutional provision was made, save such as might be chosen under and by virtue of the words "and other necessary officers," in section thirty-two of article IV. It includes all county officers whose offices have existed since the adoption of the constitution, and all that now exist, except county assessor and county school superintendent. It is not claimed that the legislature could make provision for the election or appointment of the officers included in the above list, other than by election by the people. But the framers of the constitution did not intend to name in that instrument all the officers that could be elected, or limit the state to such as were mentioned. On the contrary, section thirty-two of article IV plainly shows an intention to leave it to the legislature whether officers other than those specifically named are required, and if they are, power is given to create them and to make provision for filling them, provided only, that the incumbents shall be elected by the people. Section thirty-two is as follows: "The legislature shall provide for the election, by the people, of a clerk of the supreme court, county clerks, county recorders, who shall be *ex-officio*

county auditors, district attorneys, sheriffs, county survey-ors, public administrators, and other necessary officers, and fix by law their duties and compensation.''

Provision for the election of the other officers named in the constitution is made in other sections. At the time the constitution was framed the law provided for the election of county assessors and county school superintendents. We cannot say why those officers were omitted from the con-stitution. It may be because the framers deemed it wise to leave the method of exercising important functions of the government appertaining to the revenue and public schools, to the wisdom of the legislature, in order that it might be changed according to possible emergencies. But, what-ever the reason may have been, it cannot be said that a failure to make specific mention of assessor or any other officer in section thirty-two, or elsewhere, in the constitu-tion, justifies the conclusion that the legislature is empow-ered to fill a necessary office by any method other than by election by the people. The use of the words ''and other officers'' bars such a conclusion. Those words were inserted for a purpose, and they cannot be disregarded. They show how carefully the framers of the constitution intended to guard what, in free governments, has always been considered an inestimable privilege—the right of the people to select their own officers. Under section thirty-two it is as much the duty of the legislature to provide for the election by the people of ''other necessary officers''—that is to say, officers that are necessary in exercising the functions of the government in running the machinery of the state—as it is to provide for the election of the officers named.

The upshot of the whole matter is this: the framers of the constitution decided for themselves that the officers named were necessary and should be elected by the people ; but they left it to the legislature to decide as to the neces-sity of additional ones, whether state, county or township, requiring only that they, like those named, should be elected by the people. The duty of deciding as to the necessity of

any office, other than those named in the constitution, is placed upon the legislature, and that body, in 1866, decided that an assessor was necessary, by enacting that, among other officers, there should be elected, in each county, one county assessor, whose term of office should be two years ; and the legislature of 1883, that enacted the statute in question, also recognized such necessity, as before stated, by continuing it, by providing for the election of assessors in 1886, and every four years thereafter, and by endeavoring, at least, to extend the term of the present incumbents two years beyond the period of their election by the people. Outside of the decision of the legislature as to the necessity of county assessors, it is evident that the present method of assessment and collection, or some other, to accomplish the same purpose, is indispensable.

Section 1 of article X of the constitution declares that, the legislature shall provide by law for a uniform and equal rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of all property, with certain exceptions not material here. This mandatory provision cannot be obeyed without some efficient method of ascertaining the value of property. The duties now required of the assessors must be performed by some instrumentality, and the manner of performing them is left with the legislature. From every stand-point, then, we conclude that assessors are necessary officers. So long as they are such—until the office is abolished—they must be elected by the people. Other portions of the constitution are strongly corroborative of the views above expressed.

Section 20 of article IV provides that "the legislature shall not pass local or special laws in any of the following enumerated cases ; that is to say :  *   *   *   regulating the election of county and township officers ;" and section 21 declares that, "in all cases enumerated in the preceding section,  *   *   *   all laws shall be general and of uniform operation." Thus it is made the duty of the legislature to regulate the election of township and county officers by general laws.

In *Clarke* v. *Irwin,* 5 Nev. 121, referring to this section, the court said : "When words are used in a constitution, unless so qualified by accompanying language as to alter their ordinary and usual meaning, they must be received in such meaning. The word 'elected,' in its ordinary signification, carries with it the idea of a vote, generally popular, sometimes more restricted, and cannot be held the synonym of any other mode of filling a position. This is clearly the sense of the use of the word in the clause referred to, especially when taken in connection with sections 26 and 32, referring to the same subject. Section 32 has been previously quoted. Section 26 reads thus : 'The legislature shall provide by law for the election of a board of county commissioners in each county.' Now, although in one of those sections the legislature is commanded to provide for an 'election,' and in the other for 'an election by the people,' it will hardly be contended that the same mode of election was not contemplated in both cases, and that for the reason that the ordinary meaning of the word 'elected' implies a popular vote, unless otherwise qualified. When, then, the legislature is prohibited from passing local or special laws regulating the election of county and township officers, the prohibition runs against making distinctions between counties or townships in the matter of the popular election of their officers."

It is plain from sections twenty-one and twenty-two that the method contemplated, of filling county and township officers, is by an election under a general law. And section thirteen of article XVII provides that "all county officers under the laws of the territory of Nevada, at the time when the constitution shall take effect, whose offices are not inconsistent with the provisions of this constitution, shall continue in office until the first Monday of January, 1867, and until their successors are *elected* and qualified ; and all township officers shall continue in office until the expiration of their terms of office, and until their successors are *elected* and qualified. * * *" But it is argued by counsel for respondents that section ten of article XV justifies the action

of the legislature in extending the terms of assessors. That section is as follows: "All officers whose election or appointment is not otherwise provided for, shall be chosen or appointed as may be provided by law."

It is said that the only way to harmonize sections ten and thirty-two is to hold that the officers specifically named in the constitution, and known as constitutional officers, shall be elected by the people, and officers not so named, created by the legislature, known as legislative officers, shall be chosen as the legislature may direct. Such construction utterly disregards the words "and other necessary officers," in section thirty-two, and is inconsistent with the evident intention of the framers of the constitution. It convicts that body of inserting, in a most important instrument, words of sweeping import, which they did not intend to have construed according to their usual signification. Section ten of article XV in no manner conflicts with section thirty-two. It does not refer to state, county or township officers, whose election by the people is otherwise provided for in the constitution. Our opinion is that the office of county assessor is elective, and that, so long as it exists as a necessary office, its permanent incumbents must be elected by the people. It is claimed, however, that, although it is an elective office, the right of the legislature to extend the term of office has been recognized in three cases decided by this court, viz., *Clarke* v. *Irwin*, 5 Nev. 111; *Rosenstock* v. *Swift*, 11 Nev. 128; *Denver* v. *Hobart*, 10 Nev. 28.

We are unable to find anything in either case mentioned that is opposed to our conclusion in this. We do not deny that the legislature may make provisional appointments, if necessary, in order to put a new system in operation. Offices that must be permanently filled by an election, in cases of emergency may be provided for temporarily by other means. The constitutional mandate does not apply to such exceptional cases. (*Clarke* v. *Irwin*, *supra; People* v. *Fisher*, 24 Wend. 219.)

*Clarke* v. *Irwin* shows that certain parties were named as county officers in the bill creating the county of White

Pine, to hold until the next general election. Irwin was designated as sheriff. The court held that the statute did not violate that part of the constitution which requires county officers to be elected by the people, because the office was filled only temporarily by the legislature until the next general election, and that the constitutional mandate did not apply to cases of emergency or special occasion. Such is the undoubted law, but it does not apply to the statute under consideration. In this case there was no emergency or special occasion calling for extraordinary action on the part of the legislature. The several incumbents of the office had been elected for two years, under a general law which required their successors to be elected by the people at the next general election in 1884. Before the expiration of the term for which they were elected there would be a general election, at which their successors could be elected in the manner and form provided by the constitution. If it was desirable to change their terms of office from two to four years, still there was nothing to hinder the election of their successors at the general election in 1884. Nor does *Rosenstock* v. *Swift* militate against our views. The case shows that the act of the legislature incorporating Carson City, made certain county officers of Ormsby county *ex-officio* city officers. Among others, the sheriff was constituted *ex-officio* city marshal. It was claimed that the act was unconstitutional because it conferred city offices upon county officers, and thus permanently deprived the citizens of the state residing within the municipal subdivision of a fundamental right—the right of local self-government. The court said : " The existence of a fundamental right of municipal local self-government is necessarily dependent upon some constitutional grant or manifest implication, neither of which can be found in the constitution of this state. Hence a municipal corporation, in this state, is but the creature of the legislature, and derives all its powers, rights and franchises from legislative enactment or statutory implication. Its officers or agents, who administer its affairs, are created by the legislature, and chosen or appointed by the law of its creation."

Now, whether the court was right or wrong in its conclusion that there was no constitutional inhibition against legislative appointments of *municipal officers*, matters not in this case.   Its decision upon the objection urged was based upon such conclusion, and it is not authority against relator in this case.   On the contrary, that case shows that, if the court had found the constitutional inhibition against legislative appointments to *municipal* offices that we have found against the legislative action under consideration, the decision would have accorded with ours.   *Denver* v. *Hobart* is so plainly inapplicable we shall not review it.

At the argument of this case we were referred to *Christy* v. *Board Sup'rs*, 39 Cal. 11, and *People* v. *Batchelor*, 22 N. Y. 135, in support of the doctrine that when an elective office has once been filled by an election, the legislature may extend the term of the incumbent, provided the whole term when extended does not exceed the time limited by the constitution.   The prevailing opinion in *People* v. *Batchelor* is rejected by the court of appeals in *People* v. *Bull*, 46 N. Y. 59, and *People* v. *McKinney*, 52 N. Y. 376. We shall not stop to review these several decisions.   In Christy's case, as well as Batchelor's, it was held that the term could be extended by the legislature under the power to fix the duration of the term.   In the cases subsequently decided in New York, it was held that an extension by the legislature was, in substance, an appointment to the office for the extended term, and a usurpation by that body, of the right to fill the office, which was secured by the constitution to the electors.   We have examined these decisions with great care, and do not hesitate to adopt the reasoning and conclusions of the later New York cases, nor can we add anything to them.

To our minds it is enough to say that, since the constitution gives to the people of a county the right to elect their assessor, and they do elect him for two years, under the existing law, they have the right also to elect his successor, and, if the legislature extends his term, their rights are abridged.   Should we hold that the term could be extended,

we should have to admit that the incumbents would hold the office during the period of extension by virtue of a legislative act rather than by an election. The present assessors have been elected for two years. Should they hold their offices for four, they would have to point to the statute as evidence of their title to the office, instead of their certificates of election. Our opinion is that section two of the statute under consideration, extending the terms of county assessors beyond the time for which they were elected, is unconstitutional and void.

Section one provides for an election in 1886, and every four years thereafter, but it does not supersede the existing law during the next two years. It was not intended to go into effect during that time. It follows that county assessors must be elected at the ensuing general election, under the statute of 1866, for the two years succeeding the terms of the present incumbents.

The writ of mandamus should issue as prayed for ; and it is so ordered.