*THE PEOPLE, <em>ex relatione</em> SMITH <em>vs.</em> FISHER.     [ *215 ]

The authority of a *deputy clerk,* who discharges the duties of the office of county clerk in consequence of the *death* of his principal, *ceases* on the *appointment* by the governor of another person, to execute the duties of the office until the *vacancy* in the office of clerk be supplied by an election.

INFORMATION in the nature of a *quo warranto*. On the 11th January, 1840, the attorney general on the relation of *Chauncey Smith,* filed the information in this case charging *Thomas H. Fisher* with having on the 21st December, 1839, usurped the office of clerk of the county of Westchester, and averring that the relator is rightfully entitled to the office. The defendant *pleaded* that at the general election held in Westchester in November, 1837, *John H. Smith* was duly elected clerk of the county ; that on the

VOL. XXIV.        21

29th November, 1838, he appointed him, the defendant, *deputy clerk* of the county and he thereupon took upon himself the discharge of the duties of the office, and continued in the discharge of such duties up to and at the time of the death of *John H. Smith*, which took place on the 17th November, 1839 ; that by virtue of his appointment as deputy clerk, and by reason of the vacancy in the office of clerk of the county by the death of John II. Smith, he became authorized to perform all the duties, and entitled to all the emoluments appertaining to the office of clerk of the county until the vacancy which occurred by the death of John H. Smith was duly filled pursuant to the constitution and laws of the state. That he accordingly on the 17th November, 1839, in pursuance of his appointment as *deputy clerk*, took upon himself the office of *clerk* of the county, performed its duties, and at the time of exhibiting the information was and still is *acting clerk* of the county. The defendant also denied the right of the relator. To this plea the attorney general *replied* that on the 7th December, 1839, *Chauncey Smith*, the relator in this case, was duly *appointed* by the governor of the state, *county clerk* of the county of Westchester during the [ *216 ] time limited by the constitution and laws of the *state ; of which appointment notice was given to the defendant on the 20th December, and demand made of the books, papers and records of the office, concluding with a verification and prayer of judgment of ouster. Then follows an averment that the relator is entitled to the office of clerk, and concludes to the country. The defendant *demurred* to the replication, and among other special causes of demurrer, assigned that the replication erroneously concludes to the country, whereas it should have concluded with a verification.

*J. Holmes & M. T. Reynolds*, for defendant.

*Willis Hall*, (attorney general) for the people.

*By the Court*, Bronson, J. Although I have found this a more difficult question than I supposed it to be on the argument, further consideration has not changed the opinion which was then intimated, that the relator is entitled to the office.

Sheriffs and clerks of counties are to be chosen by the electors, " once in every three years, and as often as vacancies shall happen." *Const. Art. 4*, § 8. The legislature at first provided for *special* elections to supply vacancies in those offices. *Statutes of 1823, p. 418.* But as it was found inconvenient to have elections for county officers oftener than once in each year, the law was afterwards altered, and it was provided, that all vacancies

in the office of sheriff or clerk, should be supplied " at the *general*°election next succeeding the happening thereof." 1 *R. S.* 128, § 8.

Provision has also been made for discharging the duties of those offices during the time which must elapse before the place can be supplied by election. Every *sheriff* is required by law to appoint an *under sheriff*, who is to execute the office in case of a vacancy, until a new sheriff is elected or appointed, and duly qualified. 1 *R. S.* 379, § 71, 72. And every *county clerk* is required by law to appoint a *deputy clerk :* 1 *R. S.* 376, § 56 ; and " whenever the *office of any county clerk shall be-   [ *217 ] come vacant, his deputy shall perform all the duties, and be entitled to all the emoluments, and be subject to all the penalties appertaining to the office of clerk of the county, *until a new clerk shall be elected or appointed* for such county, and duly sworn." § 59, as amended by the 4th section of the act of April 20, 1830. *Statutes of* 1830, *p.* 385. It is also provided, that " in *every case* where a vacancy shall occur in the office of sheriff or county clerk"—" *the governor shall appoint* some fit person who was eligible to the office, to execute the duties thereof, until it shall be supplied by an election." 1 *R. S.* 124, § 49, as amended by the 2d section of the act of February 26, 1830. *Statutes of* 1830, *p.* 64.

These provisions are entirely harmonious. The under sheriff or deputy clerk is to hold, until a new officer is elected or *appointed.* When the governor exercises the power conferred on him to appoint, and the new officer is prepared to act, the authority of the under sheriff or deputy clerk is at an end by express limitation.

The order of stating the case may be reversed. The governor is to appoint some person to fill the vacancy ; but until that is done, the under sheriff or deputy clerk is to discharge the duties of the office. If there is nothing to control this view of the question, it is quite clear, that the relator, who has been appointed by the governor, is entitled to the office ; and that the defendant has held it wrongfully since the 20th of December last, when he had notice of the relator's appointment, and was required to surrender the trust.

The objection to the relator's title rests principally upon the order in which the several statutes were passed. Originally, the case of a vacancy arising from the *death* of the incumbent was *excepted* out of the otherwise unlimited power of the governor to appoint. 1 *R. S.* 124, § 49. But the exception was, in effect, repealed by the second section of the act of February, 1830, so that the power of the governor to appoint, afterwards extended to " *every case* where a vacancy shall occur." A third section was, however, added, which, taken in connection with a provision of the R. *S., would possibly have defeated the intention of the legis-   [ *218 ] lature, as manifested by the second section, if a subsequent stat-

ute had not been passed to obviate the difficulty. The third section was as follows :—" The preceding section shall not affect the power now vested by law in any sheriff, or clerk of any county, to appoint under sheriffs, or deputies ; *nor the powers of said under sheriffs or deputies, as now declared by law.*" *Statutes of* 1830, *p.* 64. The power or right of the deputy clerk, *as then declared by law,* was to hold until a new clerk should be *elected.* 1 *R. S.* 376, § 59. The particular terms of this 59th section were evidently overlooked by the legislature in framing the act of February, 1830, and the consequence was, perhaps, that the third section of that act nullified the second ; for though the governor might appoint, the person appointed could not get the office, because the deputy was authorised to hold until a new clerk should be *elected.* The error was discovered before the session ended, and on the 20th April, 1830, the 59th section was amended, so that the deputy was only to hold until a new clerk should be elected *or appointed.* *Statutes of* 1830, *p.* 385, § 4. · After that amendment was made, all the different provisions, as I have before remarked, were in harmony with each other. The governor might appoint in *every case* of a vacancy ; but in the mean time, and until that power was exercised, the deputy was authorised to discharge the duties of the office. Full effect may now be given to the third section of the act of February, 1830, without prejudice to the relator's title. " The powers" of the deputy " as now declared by law," are not " affected" or taken away by the appointment, for he only has power or right to hold *until the appointment is made.*

If it were necessary to decide the point, I should be strongly inclined to the opinion, that the act of February, 1830, in itself, worked an abridgment of the powers of, the deputy, so that his holding would terminate with the exercise of the power conferred on the governor. It is evident from the second section of that act, that the legislature intended to extend the power of appointment to the case of a vacancy by death—the only [ *219 ] excepted case in the 49th section—and *thus make it universal ; and the third section was, I think, only added by way of caution, to avoid the possible inference that the power conferred on the governor to appoint, would take away the right of the deputy to hold *until the appointment was made,* or an election had. The legislature certainly could not have intended to do a thing so absurd as to say, that the governor might appoint, but the deputy should nevertheless continue to hold the office.

But it is unnecessary to decide how the case would have stood upon the act of February, 1830, for the act of April in that year has settled the question. The order in which the several enactments were made, cannot control the question. Statutes *in pari materia* should be construed together ; and looking at all the enactments as they now stand, there can be little room for doubt that the legislature intended the governor should appoint,

and that the powers of the deputy should thereupon cease, as well in the case of a vacancy by death, as where the office becomes vacant in any other way.

It was said that the statute giving the governor power to fill the vacancy conflicts with that clause of the constitution which declares, that " sheriffs and clerks of counties—*shall be chosen by the* `electors of the respective counties, once in every three years, *and as often as vacancies shall happen.*" Art. 4, § 8. That is dangerous ground for the defendant to occupy; for if the vacancy can only be supplied by *election*, his title to the office is, of course, at an end; and judgment must be rendered against him, although the relator may also fail in his claim. But I feel no great difficulty in saying, that the law is valid. There must of necessity be an interval of time between the death, resignation or removal of the incumbent, and the filling of the vacancy by the electors; and it is essential to the public welfare that some person should in the mean time discharge the duties of the office. The legislature has provided that the vacancy shall be supplied by the people at the next general election after it happens; 1 *R. S.* 128, § 8; and that in the mean time the duties of the office shall be discharged either by the deputy or by a person appointed by the governor, or by both of them. *This space in which the office may not be filled by election can     [ *220 ] never exceed one year, and may sometimes amount only to a few days. How long it may happen to be, provided it do not extend beyond the next annual election, is a question, I think, fairly within the discretion of the legislature. The language of the constitution is not, that the office shall be filled by election *in every possible case*, nor that a vacancy shall be supplied in that manner as *soon* as it happens; but the language is, that vacancies shall be supplied by election as *often* as they happen. That end is fairly attained by referring the matter to the people at their next stated period for exercising the elective franchise.

A distinction was attempted between the law authorizing the deputy to hold, and that empowering the governor to appoint; and it was said that the former was valid, and the latter void. The argument was based on the fact, that the new constitution took from the central power the authority which it had previously exercised of appointing clerks of counties, and gave it to the people. But, as we have already seen, the election of those officers was not given to the people under all possible circumstances, and to be exercised the moment a vacancy should happen. The argument in favor of the deputy necessarily concedes, that the constitution leaves it open to the legislature to supply the place until the people can conveniently exercise their privilege. And if the legislature may supply the place in one way, I do not see why it may not be done in another, for the constitution says *nothing whatever on the subject*. It is said, however, that the statute giving the appointment to

the central power, though not against the letter, is contrary to the *spirit* of the constitution, and therefore void. When the fundamental law has not limited, either in terms or by necessary implication, the general powers conferred upon the legislature, we cannot declare a limitation, under the notion of having discovered something in the *spirit* of the constitution upon a subject which is not even mentioned in the instrument.

The objection that the replication does not conclude in the proper form, rests on a misconstruction of the pleadings.

Judgment for the people.