[No. 758.]

## STATE OF NEVADA EX REL. JOSEPH ROSENSTOCK, RELATOR, *v.* S. T. SWIFT, RESPONDENT.

CONSTITUTIONALITY OF THE ACT INCORPORATING CARSON CITY.—The act incorporating Carson city (Stats. 1875, 87), is not in conflict with article III, or sections 1 or 8 of article V, or section 10 of article XV of the constitution.

IDEM—APPOINTING POWER.—Under the constitution of this state, the naming in the act of incorporation of the persons who were to constitute the provisional or initiatory board of trustees was not the exercise of a power intrinsically executive. *Clarke* v. *Irwin* (5 Nev. 111), affirmed.

IDEM—COUNTY OFFICERS EX OFFICIO CITY OFFICERS.—The legislature, in

incorporating Carson city, had the power to constitute the designated county officers city officers, and to impose upon them the executive or ministerial duties of the municipality, corresponding to their respective duties as county officers.

MUNICIPAL CORPORATION.—A municipal corporation, in this state, is but the creature of the legislature, and derives its powers, rights and franchises from legislative enactment or statutory implication.

OFFICERS OF MUNICIPAL CORPORATION.—The officers of a municipal corporation are created by the legislature, and are chosen or appointed in the mode prescribed by the law of its creation.

IDEM—CITY RECORDER.—The provision of the act creating the office of city recorder has no reference to the jurisdiction of justices of the peace. The offices are distinct, though under the act of incorporation both offices may be held by the same person.

SECTION THREE OF ARTICLE ELEVEN OF THE CONSTITUTION CONSTRUED.—The provisions of section 3 of article XI of the constitution providing that all fines collected under the penal laws of the state shall be pledged to educational purposes, has no application to fines recoverable for violations of city ordinances, but applies to fines recoverable under the general laws of the state.

SECTION TWENTY-ONE OF ARTICLE FOUR OF THE CONSTITUTION—The act incorporating Carson city is not in violation of the provisions of section twenty-one of article four of the Constitution, which declares, "Where a general law can be made applicable all laws shall be general, * * * throughout the State." *Evans* v. *Job* (8 Nev. 323), affirmed.

MUNICIPAL CORPORATION CREATED BY SPECIAL LAW.—Section one of article eight of the constitution clearly recognizes the authority of the legislature to create municipal corporations by special enactment. This interpretation is not inconsistent with the provisions of section eight of the same article. *City of Virginia* v. *The Chollar-Potosi G. & S. M. Co.* (2 Nev. 86), affirmed.

POWERS OF A MUNICIPAL CORPORATION.—A municipal corporation possesses and can exercise such powers only as are expressly conferred by the law of its creation, or such as are necessary to the exercise of its corporate powers, the performance of its corporate duties and the accomplishment of the purposes for which it was created.

PART OF A STATUTE UNCONSTITUTIONAL.—When part of a statute is unconstitutional it will not authorize the court to declare the remainder void unless all the provisions are connected in subject-matter depending on each other.

THIS was an original proceeding in the Supreme Court in the nature of a writ of *quo warranto* to determine the right of S. T. Swift, sheriff of Ormsby county, to hold and exercise the office of marshal of Carson city, under the act of the legislature approved February 25, 1875, incorporating said city.

*Robert M. Clarke,* for Relator.

I. The act of the legislature to incorporate Carson city is unconstitutional for the reason that it appoints the officers of the city. (Stats. 1875, 88, sec. 4.) The power to appoint to office is an executive power. (Const. art. 5, sec. 1–8; Const. art. 15, sec. 10; 4 Abbott's Pr. 35; 1 Cranch, 137; *State* v. *Kennon et al.,* 7 Ohio State, 347.) Article III of the Constitution forbids the legislature to exercise it. (Art. III, Const. Nev.)

II. The act constitutes the county officers *ex officio* city officers, and thus permanently deprives the citizens of the state residing within the municipal subdivision of a fundamental right, to wit: the right of local self-government. (Const. art. 2, sec. 1; Const. art. 4, sec. 32; Cooley's Const. Lim. 34, 35; 55 New York, 55.) To permit the people of the entire county to choose the officers of Carson city, is as gross a denial of self-government as to permit the people of the entire state to choose the officers of Ormsby county.

III. The act is unconstitutional in this. It is a special law regulating the jurisdiction of justices of the peace. (Const. art. 4, sec. 20.) It confers additional and exceptional powers and duties upon the justice of Carson township.

IV. The act is unconstitutional in this: It diverts penal fines from the school fund. (Art. 11, Const., sec. 3.)

V. The act is unconstitutional in this: It is a special law in a case where a general law exists, and can be made applicable. (Act Feb. 21, 1873, laws 1873, 66–74, in Const. Nev., art. 4, sec. 21; *Evans* v. *Job,* 8 Nev. 322; *Ex parte Pritz,* 9 Iowa, 35, 36; *Town of McGregor* v. *Baylis,* 19 Id. 47–48.) The general law exists, and is in force. (Laws 1873, 66.) Carson city was organized under it when the act was passed.

VI. The act is unconstitutional in this: It imposes no restrictions upon the powers of taxation, assessment, borrowing money or loaning credit, whereas, the constitution, in terms, requires this to be done. (Const., art. 8, sec. 8; Stats. 1875, 90, 91, 96; Cooley Const. Lim. 39, 40; Dil-

lon Munic. Corp., sec. 27, 134; *Foster* v. *City of Kenosha*, 12 Wis. 616; *Rogan* v. *City of Watertown*, 30 Id. 264–65; *Brunson* v. *Mayor of Albany*, 24 Barb. 495; *Bank of Rome* v. *Village of Mosell*, 18 N. Y. 41.) The power to borrow money, etc., exists under art. 8, sec. 8, Const.; 30 Wisconsin, 264, 265.

VII. The act is unconstitutional in this: It is a special law for the organization of a city, the constitution requiring all such laws to be general. (Const. Nev., art. 8, sec. 8; Const. Ohio, art. 13, sec. 1–2–6; 20 Ohio St. R. 34–35, 36, 37; Const. Iowa, art. 8, sec. 1; 9 Iowa, 30, 32–33; 19 Id. 43, 46; Const. Kansas, art. 12, sec. 5; 4 Kansas, 141–42–43–47–48; 9 Id. 695–96; *City of Virginia* v. *Chollar-Potosi Co.*, 2 Nev. 86–89, 90–91.)

It is a rule of construction, that the whole constitution may be examined with a view to arriving at the true meaning of any part. (Cooley's Const. Lim. 57–58; Broom's Maxims, 521.) It is also a rule of construction, that effect is to be given, if possible, to the whole instrument and to every section and clause. If different portions seem to conflict, the court must harmonize them. (Cooley Const. Lim. 57–58; 24 Cal. 539.) To apply the foregoing rules of construction to the case in hand. As we have seen the necessary effect of section 8, article 8, of the state constitution is to forbid the incorporation of towns and cities by special laws. To require a thing to be done by general laws, is to forbid it to be done by special law. (See cases cited in support of point VII.) To hold that section one authorizes the organization of cities and towns by special laws, is to give to the section an interpretation inconsistent with, and destructive of section eight; is in effect to say, that section eight requires towns and cities to be organized by "general" laws, and that section one permits them to be organized by "special" laws, which is contradictory and absurd.

To harmonize sections one and eight, and give to each effect, it is only necessary to interpret each according to the ordinary import of the words employed, and the manifest spirit of the whole instrument.

Section eight requires towns and cities to be organized

under general laws, section one permits special legislation relating to, or concerning the powers of, municipal corporations which were organized and existing at the adoption of the constitution.

*Ellis & King*, for Respondent.

I. The doctrine of local self-government, as applied to a municipal corporation created under our state constitution, cannot be found in our state constitution. The people have no natural right of voting. A legislative office may be created and filled.

The constitution must in terms, or by necessary implication at least, limit the power of the legislature in this, as well as in all other matters, otherwise the legislature has the power to do that which has been done in this case. (Smith's Com. secs. 179–80; 5 Nev. 125–7; Id 293–4; *Bull* v. *Snodgrass*, 4 Nev. 524; Const. N. Y. 162.)

II. The constitution of Nevada only provides a general system of filling vacancies, giving to the governor special powers in certain cases, and recognizing that the laws may provide also for filling certain vacancies. Here if there was a vacancy it was provided for by law (*Clark* v. *Irwin*, 5 Nev. 111), and the filling of such vacancy was only temporary and provisional. (Smith's Com. secs. 179–80.) The legislature has unlimited power in any matter of legislation unless specifically limited. (*Gibson* v. *Mason*, 5 Nev. 286, 293, 299, 300; *Ash* v. *Parkinson*, 5 Id. 15; *Evans* v. *Job*, 8 Nev. 337–9; 7 Nev. 30.)

III. The act does not confer jurisdiction upon any justice of the peace; that remains intact under the general laws, but is mere *descriptio personæ*, and simply designates who shall be recorder.

IV. The provisions of art. 2, sec. 3, of the constitution of Nevada, apply solely to fines recoverable under general laws, regulating fines for misdemeanors, and apply uniformly to the whole state, and not to fines for the violation of city ordinances.

V. Under art. 8, secs. 1 and 8 of the constitution of this state, a corporation for municipal purposes may be created by special act. (Cal. Const.; 5 Nev. 124; *Chollar*

*Potosi* v. *Virginia City*, 2 Nev. 87; *Hess* v. *Pegg*, 7 Id. 23; *Evans* v. *Job*, 8 Id. 322; *Clarke* v. *Irwin*, 5 Id. 111.) But this is a general law as contra-distinguished from a special law. Smith's Com., secs. 802–4; *People* v. *Potter*, 35 Cal. 115; 3 N. H. 321; 17 Id. 547; 12 Pick. 344; 9 Greenl. 56; 5 Id. 511; 5 Mass. 268; 29 Ind. 409; *Young* v. *Hall*, 9 Nev.; Const. N. Y.; *U. S. Trust Co.* v. *Brady*, 20 Barb. 119; *People* v. *Bowen*, 21 N. Y. 517.)

VI. An assessment for grading a street in the town is not a tax within the meaning of article 8, section 8, and restricted by the act. (Laws 1875, p. 90, sec. 10, clause 2; 28 Cal. 355, *et seq.*, and pp. 361, 367, 372.) And limitation is omitted from the act; the responsibility is upon the legislature, and is not a matter for judicial correction. (Id. 367; 18 N. Y. 42; *Bank of Rome* v. *Village of Rome*, 26 N. Y. 69–70.) A license is not a tax, and the imposition of a license is not taxation within the meaning of article 8, section 8, of the Const. (34 Cal. 448–9; 4 Cal. 46; 1 Cal. 252–54; *Anderson* v. *Doll*, 27 Cal. 607; *Attorney-General* v. *Squires*, 14 Cal. 12.) But there is a limitation upon the power of taxation, properly so called, and upon the powers of the board contracting indebtedness, borrowing money or loaning credit. (Laws 1875, 90, secs. 10 and 31.) Money cannot be borrowed nor credit loaned without incurring indebtedness. (*Mason* v. *Gibson*, 5 Nev. 300.)

VII. But if there is no limitation, as claimed, and there is no power to levy assessments, still the act is valid and complete, and useful in other respects, and must stand so far as the information is concerned. (34 Cal. 457; 17 Id. 554; 18 Id. 68; 22 Id. 663; 5 Nev. 131; 8 Id. 342, and cases cited; 3 Id. 180; 32 Md. 369; 31 How. Pr. 289, 343; *People* v. *Rochester*, 50 N.Y. 553.)

By the Court, Earll, J.:

This is a complaint or information by the attorney-general of this state, in the nature of a *quo warranto*, instituted at the relation of Joseph Rosenstock, to determine the right of the respondent to hold and exercise the office of marshal of Carson city. The respondent demurred to the complaint

or information on the general ground that it does not state facts sufficient to constitute a cause of action; hence the facts stated therein are to be taken as admitted.

The questions presented involve the validity of the act entitled "An act to incorporate Carson city," approved February 25, 1875. (Stats. 1875, 87.) It is contended by the relator that the act is in contravention of several provisions of the constitution of this state, and is, therefore, totally void.

The first objection urged against the validity of the act is that the legislature had no power to appoint, in the act of incorporation, the board of trustees who were to organize the city government and to conduct the affairs thereof for the first year, as provided by section four of the act, which is as follows: "The board of trustees for the first year shall consist of Henry F. Rice and A. B. Driesbach, representing the first ward; David A. Bender and William H. Corbett, representing the second ward; and Jacob Klien, from the city at large, whose duty it shall be, upon the first Monday in March, eighteen hundred and seventy-five, to assemble at the court-house in Carson city, take the oath of office as such trustees, and hold their first meeting as a board of trustees. Before entering upon any other business, the trustees above named, representing the first ward, shall determine their several terms of office by lot; and as so determined, the one trustee shall continue in office until the first Monday in May, A. D. eighteen hundred and seventy-six, and until his successor is duly qualified; and the other of said trustees shall hold his office as such until the first Monday in May, eighteen hundred and seventy-seven, and until his successor is duly qualified; and the other two trustees, hereinbefore named as representing the second ward, shall then and there, in like manner, determine by lot, their several terms of office, and shall, as so determined, hold in all respects as the trustees of the first ward. The board shall then elect one of their number, who shall be the president of the board of trustees until the first annual election taking place under the provisions of this act, and the board

shall then proceed generally upon their duties." (Stat. 1875, 88.)

It is argued that the power of appointment to office is, in its nature, an executive function, and therefore the naming, in the above-quoted section of the act, the persons who were to constitute the trustees for the first year, was in violation of article three, and sections one and eight of article five, and section ten of article fifteen of the constitution of this state, which are as follows:

"Article 3. The powers of the government of the state of Nevada shall be divided into three separate departments —the legislative, the executive, and the judicial; and no persons charged with the exercise of powers properly belonging to one of these departments shall exercise any functions appertaining to either of the others, except in cases herein expressly directed or permitted.

"Article 5, section 1. The supreme executive power of the state shall be vested in a chief magistrate, who shall be governor of the state of Nevada.

"Sec. 8. When any office shall, from any cause, become vacant, and no mode is provided by the constitution and laws for filling such vacancy, the governor shall have the power to fill such vacancy by granting a commission, which shall expire at the next election and qualification of the person elected to such office."

"Article 15, section 10. All officers whose election or appointment is not otherwise provided for, shall be chosen or appointed as may be prescribed by law."

Of these provisions of the constitution, section 8 of article 5, alone confers any appointing power upon the executive department of the government, and that only so far as to authorize the governor to temporarily fill vacancies occurring in existing offices, when no other mode for filling such vacancies has been provided by the constitution and laws.

The constitution nowhere designates what officers shall be provided for incorporated cities, nor does it declare whether municipal officers shall be elected or appointed, and if there is any restriction on the power of the legislature over such officers it must be found elsewhere than in

the provisions of the constitution above quoted.   But there
is nowhere in the constitution any express  provision on the
subject, hence if such limitation of the legislative power, as
is here contended for exists, it must be found in some man-
ifest implication.

It is, however, argued on behalf of the relator, that the
appointing power is in its nature and essence executive, and
inherent in the executive department independent of any
express provision of the constitution, and *Marbury* v. *Mad-
ison*, 1 Cranch, 137; *Achley's Case*, 4 Abbott's Pr. 35, and
*The State ex rel. Attorney-General* v. *Kennon*, 7 Ohio St. 546,
are cited in support of this position.   The only authority
above cited which, in our opinion, tends to support the po-
sition of relator is the case cited from 4 Abbott's Pr. 35.
In that case Davies, J., says: "The exercise of the power
of appointment to office is a purely executive act, and when
the authority has been exercised, it is final, for the term of
the appointee."   The authorities cited in support of this
opinion are the ninth section of the amended charter of the
city of New York in which it was provided, "that no com-
mittee or member of the common council shall perform any
executive business whatever, except such as is or shall be
especially imposed on them by the laws of this State, and
except that the board of aldermen may approve or reject
the nominations made to them as hereafter provided;" from
which the learned judge inferred that the legislature re-
garded the power to make appointments to office as the ex-
ercise of executive authority; and also, the following quoted
from *Marbury* v. *Madison*, 1 Cranch, 137, *supra:* "When
he (the president) has made an appointment, he has exer-
cised his whole power, and his discretion has been com-
pletely applied to the case.  If, by law the officer be re-
movable at the will of the president, then a new appoint-
ment may be immediately made, and the rights of the offi-
cer are terminated.   But, as a fact which has existed can-
not be made never to have existed, the appointment cannot
be annihilated; and, consequently, if the officer is by law
not removable at the will of the president, the rights he
has acquired are protected by law, and are not resumable

by the president. They cannot be extinguished by executive authority." Judge Davies, after quoting the above, says: "It is perfectly apparent, therefore, that the exercise of the power of appointment to office is not a legislative act." It may be conceded that the exercise of the power of appointment to office is not strictly a legislative act, yet it does not necessarily follow that it is the exercise of a purely executive function. It is very clear that there is nothing in the opinion of Chief Justice Marshall (from which the above was quoted by Judge Davies) from which it can be implied that the appointing power is inherent in the executive department of the government. The opinion was based upon the positive provisions of the Constitution of the United States conferring the power on the president; but the chief justice nowhere characterizes the appointment to office as the exercise of an executive power, but on the contrary, declares it to be a political power, which, under the Constitution of the United States is to be exercised by the President. (See opinion, 159, 167.) Cooley, under the head of "legislative encroachments upon executive power," says: "If it is difficult to point out the precise boundary which separates legislative from judicial duties, it is still more difficult to discriminate, in particular cases, between what is properly legislative and what is properly executive duty. The authority that makes the laws has large discretion in determining the means through which they shall be executed, and the performance of many duties which they may provide by law, they may refer either to the chief executive of the state, or, at their option, to any other executive or ministerial officer, or even to a person specially named for the duty." (Const. Lim. 114, 115.)

It is true, the line of distinction between the legislative and executive powers of the government, in respect to appointments to office, is not always so clearly drawn as to be free from doubt. It depends upon the form of government to which it is to be applied. What would come within the legislative power, in our form of government, would fall within the executive in another, and *vice versa*. The question here presented is, whether, under the constitution of

this state, the naming in the act of incorporation of the persons who were to constitute the provisional or initiatory board of trustees, was the exercise of a power intrinsically executive. This precise question was presented, and, as we think, correctly decided by this court in the case of *Clarke* v. *Irwin* (5 Nev. 111). In that case, the court, by Whitman, J., referring to the case of *The State ex rel. Attorney-General* v. *Kennon, supra* (7 Ohio St. 456), (also cited by the relator in that case), say: "The decision in that case is probably correct; but it is based upon a constitutional provision unlike any to be found in the constitution of the state of Nevada. By such provision the appointing power was expressly taken away from the legislature and given to the governor, as the recital of the clause will clearly show;" * * * and that to use the language of one of the judges, "appointing power by the general assembly is thus cut up by the roots, except only in the special cases, in which it is expressly given by the constitution itself. In the constitution of the state of Nevada, the appointing power of the legislature is neither cut up by the roots, nor in any manner hampered, save where the constitution itself, or the federal constitution, provides for filling a vacancy. The former prescribes the mode of filling vacancies only as to state officers and members of the legislature; the latter, as to United States senators and representatives in congress. In every other case the power is in the legislature, to be by it regulated by law, as is evident from the fact that no provision is made save as to vacancies; and as to these, the following is used:" * * * (Const. Nev., Art. V., Sec. 8.) "Two things must then concur: there must be a vacancy, and no provision made by the constitution, or no existent law for filling the same before the governor can exercise the appointing power. Now if upon the creation of this new office, because it is such, as the office of sheriff of White Pine county had no existence until the passage of the law creating the county, no vacancy occurred, the office remained to be filled by some power. The governor had not that power, and there was no prohibition upon the legislature, unless it exist in the constitutional provisions

heretofore considered, and it has been seen that there it cannot be clearly found, as applicable to a case similar to the present; wherefore the office could be properly filled by the legislature."

This seems to us to be a correct exposition of the constitutional provisions involved, and is fully sustained by judicial decisions of other states in whose constitutions similar provisions are found. (*Davis* v. *The State*, 7 Md., 151; *Mayor &c. of Balt.* v. *State, ex. rel. The Board of Police of Balt.*, 15 Md., 376; *People* v. *Bennett*, 54 Barb., 481; *The People* v. *Hurlbut*, 24 Mich., 44.)

The next objection is that the act is unconstitutional because it constitutes certain county officers *ex officio* city officers. By the eleventh section of the act the treasurer of Ormsby county is constituted *ex officio* city treasurer; by the twelfth section the assessor of the county is constituted *ex officio* the city assessor; by the thirteenth section the district attorney of the county is constituted *ex officio* the city attorney; by the fourteenth section the sheriff is constituted *ex officio* the city marshal; and by the fifteenth section the county clerk is constituted *ex officio* the city clerk.

It is difficult to distinguish the principle involved in this objection from the one just considered, and if our conclusion is correct in respect to the power of the legislature to make the provisional or initiatory appointments therein referred to, it follows that it had the power to constitute the designated county officers city officers, and to impose upon them the executive or ministerial duties of the municipality corresponding to their respective duties as county officers. The duties imposed upon them as city officers are of the same character as those which they are respectively required to perform as county officers, and there is no constitutional inhibition against the exercise of the duties of a municipal office by a person holding a county office, when the duties of each are of the same character. But it is claimed that the legislature, by conferring these city offices upon the county officers, have "permanently deprived the citizens of the state, residing within the municipal subdivision, of a fundamental right: the right of local self-government."

The existence of a fundamental right of municipal local self-government, is necessarily dependent upon some constitutional grant or manifest implication, neither of which can be found in the constitution of this state. Hence, a municipal corporation, in this state, is but the creature of the legislature, and derives all its powers, rights and franchises from legislative enactment or statutory implication. Its officers or agents, who administer its affairs, are created by the legislature, and chosen or appointed in the mode prescribed by the law of its creation. (*People* v. *Coon et al.*, 25 Cal. 649; *Giovanni Herzo* v. *San Francisco*, 33 Cal. 134; *Payne et al.* v. *Treadway*, 16 Cal. 220.) Nevertheless, the principle of local self-government has always been recognized, to a certain extent, by the legislature of this state in the passage of statutes creating and providing for the government of municipal corporations, and the selection of officers and agents to administer the affairs of such corporations has generally been intrusted to the electors of the respective municipalities, or their appointment committed to the authorities thereof; and it cannot, with propriety, be said that the legislature have wholly disregarded this principle in the passage of the act under consideration, because by section 3 of the act the entire government of the city is vested in a board of trustees, to consist of five members, who are required to "be actual residents and owners of real estate in the city, and to be chosen by the qualified electors thereof."

The third objection to the constitutional validity of the act is: "It is a special law regulating the jurisdiction of justices of the peace."

This objection is directed to the sixteenth section of the act, by which a recorder's court is created for the city, and the justice of the peace of Carson township is constituted "*ex officio* the city recorder, with the like jurisdiction as commonly conferred upon recorder's courts in municipal corporations, subject to appeals taken to the district court as from justices of the peace." It is quite apparent that this provision of the act has no reference whatever to the jurisdiction of justices of the peace. The offices of justice

of the peace and of city recorder are distinct offices, though, under the act of incorporation, both offices may be held by the same person; and there being no constitutional inhibition against the exercise of both by the same person, we are unable to perceive any force in the objection. (*Merrill* v. *Gorham*, 6 Cal. 41; *People* v. *Edwards et al.* 9 Cal. 286; *People* v. *Durick*, 20 Id. 94.)

The fourth objection urged against the validity of the act is: "It diverts penal fines from the school fund."

By the eighteenth section of the act it is provided: "All taxes, fines, forfeitures, or other moneys collected or recovered. by any officer or person, under or by virtue of the provisions of this act, or of any valid ordinance of the city, shall be paid by the officer or person collecting or receiving the same to the city treasurer. * * * All such moneys shall be placed by the city treasurer in a fund to be known as the general fund, and shall be so kept except as paid out upon proper warrants. * * * " It is argued on behalf of relator that the act in this respect is in violation of that part of section three of article eleven which declares: "All fines collected under the penal laws of the state * * * shall be, and the same are, hereby solemnly pledged for educational purposes, and shall not be transferred to any other fund for other uses." The answer to this is, that this clause of the constitution has no application to fines recoverable for violations of city ordinances, but applies solely to fines recoverable under the general laws of the state. There is a broad distinction between the penal laws of the state and penalties prescribed by the ordinances of municipal corporations, and this provision of the constitution manifestly means such fines only as are collected under the penal laws prescribed by the law-making power of the state, and cannot, by any legal or constitutional rule of construction, extend to penalties incurred for violation of the ordinances of municipal corporations.

The fifth objection is that the law is void because "it is a special law in a case where a general law exists and can be made applicable;" and it is therefore contended that the act was passed in violation of that clause of the twenty-first section of article 4 of the constitution, which declares: "Where

a general law can be made applicable, all laws shall be general and of uniform operation throughout the State." The argument in support of this proposition is that, inasmuch as a general law existed at the time of the passage of the act in question (Stat. 1873, 66) providing for the government of cities and towns, and the town of Carson having been organized under its provisions, it is, therefore, practically demonstrated that a general law can be made applicable. The principle involved in this proposition cannot be distinguished from that decided in *Hess* v. *Pegg*, 7 Nev. 23, and also in that of *Evans* v. *Job*, 8 Nev. 323. The same argument was urged against the validity of the acts respectively involved in those cases, and the same authorities cited in support thereof as are presented here; there was an elaborate opinion in each case in which all the authorities cited by counsel for the relator, as well as others bearing upon the subject, were fully reviewed, the result of which is an exposition of this provision of the constitution adverse to the position of relator, and the principle thus decided must now be regarded as the settled law of this state.

There is, however, another clause of the constitution which, in our opinion, clearly recognizes the authority of the legislature to create municipal corporations by special enactment. We refer to section one of article eight, which provides that "the legislature shall pass no special act in any manner relating to corporate powers, except for municipal purposes; but corporations may be formed under general laws; and all such laws may, from time to time, be altered or repealed." It is true, counsel for relator contends that this interpretation of the section is inconsistent with, and in violation of, section eight of the same article, which reads as follows: "The legislature shall provide for the organization of cities and towns by general laws, and restrict their powers of taxation, assessment, borrowing money, contracting debts, and loaning their credit, except for procuring supplies of water." It is argued that the two sections can be harmonized only upon the theory that section eight requires all towns and cities to be organized under general laws, while section one merely "permits

special legislation relating to, or concerning the powers of municipal corporations which were organized and existing at the adoption of the constitution." This interpretation of counsel for relator is opposed, not only by judicial decisions, but by the practice of the state ever since the adoption of the constitution, and in our opinion, cannot be sustained upon any established principle of constitutional interpretation. In this country, the creation of corporations, whether private or municipal, is the exercise of legislative power, and until comparatively a recent period, both kinds of corporations were created singly, by special acts of legislation. It, therefore, follows that the authority of the legislature to create corporations by special laws is limited only by the express or necessarily implied restrictions of the constitution. We are, therefore, of opinion that it was not the design of the framers of the constitution, by these provisions, to restrict the power of the legislature, except in respect to corporations other than municipal. "The people, in framing the constitution, committed to the legislature the whole law-making power of the state, which they did not expressly or impliedly withhold. Plenary power in the legislature for all purposes of civil government is the rule. A prohibition to exercise a particular power is an exception. In inquiring, therefore, whether a given statute is constitutional, it is for those who question its validity to show that it is forbidden." (*People* v. *Draper*, 15 N. Y. 543; see also *Bank of Chenango* v. *Brown*, 26 N. Y. 469.) There is nothing in all this in anywise in conflict with the authorities cited in support of the position of relator. The decisions cited from the reports of Ohio, Kansas, and Iowa, are all based upon constitutional provisions, which in this respect are entirely unlike the constitution of this state.

The decisions of Ohio and Kansas rest upon the same constitutional provisions, which are as follows: "The general assembly shall pass no special act conferring corporate powers. Corporations may be formed under general laws, but all such laws may, from time to time, be altered or repealed." (Const. Ohio, article 13, sections 1 and 2; Const. Kansas, article 12, section 5.) The courts of those states

hold that the restriction in these provisions apply to public
as well as private corporations, and there can be no ques-
tion as to the correctness of those decisions as applied by
the courts of those states, but they are not applicable to the
constitution of this state because municipal corporations
are expressly excepted from the operation of the restriction.
Also by the thirtieth section of the third article of the con-
stitution of Iowa, the legislature of that state is expressly
prohibited from passing "local or special laws.   *   *   For
the incorporation of cities and towns;" and by section one
of article eight of the same constitution, it is provided as
follows: "No corporation shall be created by special laws,
but the general assembly shall provide, by general laws, for
the organization of all corporations hereafter to be created,
except as hereinafter provided."   The exception in this
clause refers to the establishment of a state bank and its
branches.   It will thus be seen that the legislatures of those
states are, by the positive provisions of their respective con-
stitutions expressly prohibited from creating either munic-
ipal or private corporations except by general laws.

The only other authority cited by counsel in support of this
proposition is the case. of the *City of Virginia* v. *The Chollar
Potosi G. & S. M. Co.*, 2 Nev. 86, decided by this court in
1866, and in which the precise question under consideration
was presented and decided, but instead of sustaining the
argument urged on behalf of relator is, in our opinion, a
complete answer thereto.   The action was brought to re-
cover municipal taxes alleged to be due from the defendant
to the city of Virginia for taxes on the products of mines.

The defense was that the act of 1865, granting to the city
a new charter under which the tax in question was levied,
was in conflict with section 8, of article 8, of the constitu-
tion, and was, therefore, void.   Beatty, J., in delivering
the opinion of the court, after some general observations in
respect to the object and meaning of section 8, says: "But
there is another section of the constitution, to-wit: section
1, of article 8, which we think settles this question.   That
section reads as follows: 'The legislature shall pass no
special act in any manner relating to corporate powers, ex-

cept for municipal purposes, but corporations may be formed under general laws, and all such laws may, from time to time be altered or repealed.' The expression 'in any manner relating to corporate powers' is a rather ambiguous phrase, but we think the framers of the constitution meant by that language to prohibit the *formation of corporations by special acts.* The subsequent language, 'but incorporations may be formed under general laws,' shows that was the meaning intended to be conveyed. Then to use more appropriate language the section would read in this way: 'The legislature shall pass general laws for the formation of corporations, but no corporations (except corporations for municipal purposes) shall be created by special act.' This we think is what the constitution meant to express."

We entertain no doubt of the correctness of this exposition of these constitutional provisions. Both sections originated in the constitution of the state of New York, adopted in 1846, and have since been substantially incorporated into the constitutions of Wisconsin, Michigan and California, and perhaps some other states, in all of which, so far as we have been able to ascertain, the power of the legislature to create municipal corporations by special acts is conceded, and only denied in those states where the provisions of section 8 have been adopted in connection with a clause expressly inhibiting the legislature from passing such special acts.

This disposes of every objection urged against the constitutional validity of the act except that which arises upon the clause of section 8, of article 8 of the constitution, which requires the legislature to impose restrictions upon municipal corporations in respect to their " powers of taxation, assessment, borrowing money, or loaning their credit."

This provision of the constitution evidently imposes a duty upon the legislature in respect to the subjects specified, but it does not direct when or how it shall be exercised; nor does it prescribe the character or measure of the restriction which shall be imposed. It therefore follows, that the legislature alone has the power to determine the

*mode* and *measure* of the restriction. Judge Dillon, referring to this constitutional provision, says: "This obviously enjoins upon the legislature the duty of providing suitable and proper restrictions upon the enumerated powers, but in what the restrictions shall consist, and how they shall be imposed, are subjects left to the discretion or sense of duty of the legislative departments, with the exercise of which the courts cannot interfere." (1 Dillon on Municipal Corporations, section 27.) Judge Cooly, referring to the same subject, says: "Whether, in any case, a charter of incorporation could be held void on the ground that it conferred unlimited powers of taxation, is a question that could not well arise, as a charter is probably never granted which does not impose some restrictions; and when that is the case, it must be inferred that those were all the restrictions the legislature deemed important, and that therefore the constitutional duty of the legislature has been performed." (Cooly on Const. Lim. 518. See also *Hill* v. *Higdon,* 5 Ohio St. 248; *Maloy* v. *Marietta,* 11 Id. 636–8; 13 Mich. 481; *Bank of Rome* v. *Rome,* 18 N. Y. 38; *Benson* v. *Mayor, etc., of Albany,* 24 Barb. 248; *Clark* v. *Rochester,* Id. 446.) But whether the proposition last above quoted is a correct exposition of this provision of the constitution or not, we do not feel called upon to decide in this case, since it is clear that a limitation is imposed in respect to each of the enumerated subjects by the act in question. By the second subdivision of section 10, it is provided: "They (the board of trustees) shall annually levy a tax of not less than one-quarter of one per cent., nor exceeding one per cent., upon the assessed value of all real and personal property situate in the city and made taxable by law for state and county purposes." And by the third subdivision of the same section, the power of assessment conferred for the improvement and repair of streets and sidewalks is limited to the cost of such improvements and repairs, and required to be assessed against the owner or owners of the property in front of which the improvement or repair is made; and by the thirty-first section it is provided that "No debt shall be created directly or indirectly against the city beyond the

amount of current revenues of the city; nor shall any contract for supplies of water or gas, or other supplies for the city, or any other contract whatever made on behalf of the city, be of any validity for any period exceeding one year." It will thus be seen that the legislature was not unmindful of the duty enjoined by the constitutional provision referred to, nor did they evade its performance by the passage of the act in question. It is true, there is no express restriction upon the power of the corporation to loan its credit; but no such restriction was required, because the power is nowhere granted by the act. It is a well-settled principle of law that a municipal corporation possesses and can exercise such powers only as are expressly conferred by the law of its creation, or such as are necessary to the exercise of its corporate powers, the performance of its corporate duties, and the accomplishment of the purposes for which it was created. (1 Dill. on Mun. Corp., section 55, and authorities cited.)

The question whether the failure on the part of the legislature to impose restrictions upon the power of the corporation in respect to fixing and collecting a license tax, conferred by the eighth subdivision of the tenth section, is not necessarily involved in the decision of this case, and it is, therefore, wholly unnecessary to discuss it. If that provision of the act is entirely invalid, it in no respect impairs the general operation and effect of the act. It is not sufficient for the relator to show that some particular provision of the act is not warranted by the constitution. "It is well settled that when a part of a statute is unconstitutional, that will not authorize the court to declare the remainder of the statute void, unless all the provisions are connected in subject-matter, depending on each other, operating together for the same purpose, or otherwise so connected in meaning that it cannot be presumed that the legislature would have passed one without the other." (*Evans* v. *Job*, *supra*, 342.)

It is apparent that the main general purposes of the act are not dependent upon the validity of the provision referred

to, nor is the right of respondent to exercise the office of city marshal in any manner affected thereby.

We are, therefore, of opinion that the act in question is constitutional, and that respondent is entitled to exercise the office of marshal of said city. It is, therefore, ordered that the information be dismissed.