[No. 1388.]

THE STATE OF NEVADA, EX REL. CHARLES E. MACK, RELATOR, *v.* JAMES D. TORREYSON, ATTORNEY GENERAL, RESPONDENT.

CONSTITUTIONAL LAW—REGENTS OF THE STATE UNIVERSITY.—Prior to '891 the board of regents of the state university consisted of three members, elected by the people, as provided for by the act of February 7, 1887. The constitution requires that "the governor, secretary of state, and superintendent of public instruction shall for the

first four years, and until their successors are elected and qualified, constitute a board of regents to control and manage the affairs of the university and the funds of the same, under such regulations as may be provided by law. But the legislature shall, at its regular session next preceding the expiration of the term of office of said board of regents, provide for the election of a new board of regents and define their duties." The act of March 19, 1891, provided that "the board of regents of the state university shall consist of three elective members, as now provided by law, and of the governor and attorney general, who shall be *ex-officio* members of said board." Respondent, as attorney general, claimed by virtue of said act to be a regent of the state university. *Held,* that respondent is not entitled to discharge the duties of regent because he has not been elected to that position in the manner provided by the constitution and the act of 1887.

APPEAL from the District Court of the State of Nevada, Ormsby county.

*Richard Rising,* District Judge.

The facts sufficiently appear in the opinion.

*W. E. F. Deal,* for Appellant.

I.   The act of March 19, 1891, under and by virtue of which respondent claims to be a regent of the State University, is unconstitutional.   It is in direct contravention of section 7 of article XI of the constitution.

II.   The office of regent of the State University is a constitutional office and cannot be legally filled in any other mode than that prescribed by the constitution itself.   The word " elected " as used in section 7 of article XI of the constitution can only be construed to mean elected by the people by ballot.   (*Clarke* v. *Irwin,* 5 Nev. 121; *State* v. *Arrington,* 18 Nev. 419; *McGruder* v. *Swann,* 25 Md. 214.)

III.   The constitution intended that one man should be attorney general and that another man should be regent.   It would be just as legal to make a regent, either by act of the legislature, or appointment, or election, ex-officio, governor, or attorney general, as it would be to reverse the process.

IN REPLY.

I.   The action was brought under the quo warranto act and not under the civil procedure act.   There is no essential difference in the nature of the proceeding provided by each of these

acts. Counsel can cite no case to sustain their position that the one act applies only to usurpers and the other to de facto officers. Relator has a sufficient interest in the subject matter of the proceeding to entitle him to maintain this action without the permission of the attorney general. It must be conclusively presumed that the attorney general would refuse to sanction an action against himself. The suit was properly brought, in whatever aspect it may be considered.

II. The argument of counsel for respondent, that when the people elect a governor and an attorney general they thereby elect regents and the constitutional right of the people to elect the regents is not denied, is fallacious. The vice of the argument consists in the fact that the legislature has deprived the people of saying who shall be regent unless they also say that he shall be governor or attorney general.

*Sardis Summerfield* and *Trenmor Coffin,* for Respondent.

I. The action was improperly brought under the civil procedure act. It should have been brought under the quo warranto act. Chapter 5 of title 8 of the civil procedure act was intended for actions against usurpers, while the quo warranto act was intended for de facto officers. It clearly appears upon the face of the complaint that respondent is at least a de facto officer.

II. The offices of attorney general and regent of the State University may both be held by the same person at the same time without violating any constitutional provisions. (*Crosman* v. *Nightingill,* 1 Nev. 326; *State* v. *Laughton,* 19 Nev. 206; *State* v. *Weston,* 4 Neb. 243.)

III. Respondent does not deny that the office of regent under the constitution is an office that must ordinarily and ultimately be filled by election by the people. He contends, however, that the act in question created two new offices of regent, which as soon as created were vacant and proper to be filled provisionally by legislative appointment in order to set the new system of university government into operation, and that the constitutional provision relied upon by appellant does not apply in such cases. (*State* v. *Snodgrass,* 4 Nev. 524; *Clarke* v. *Irwin,* 5 Nev. 111; *State* v. *Arrington,* 18 Nev. 420; *Walsh* v. *Commonwealth,* 89 Pa. St. 419.).

IV. If the act in question is constitutional, the people, at the

general election in 1894, will elect four regents, of whom the governor and the attorney general will be two, How then does the act assailed deprive the people of the right to elect the regents?

V. The courts will not inquire into the necesity of the act to increase the number of the regents, as that is purely a legislative question. (*In re Board of Commissioners of Johnson Co·* Wyoming, Ad. Sheets, Pac. Rep. No. 12, 1893, p. 350.)

By the Court, MURPHY, C. J.:

This was a proceeding begun in the district court, in the nature of a quo warranto, to try the validity of respondent's claim or right to act as a member of the board of regents of the state university.

It is set forth in the petition that the respondent is now and ·ever since the month of January, 1891, has been the duly elected, qualified and acting attorney general of the state of Nevada. That since the 19th day of March, 1891, said respondent as such attorney general, and by virtue of such office claims to be a regent of the state university, under and by virtue of an act of the legislature; that he has never been nominated, elected or appointed, to fill said office of regent. That Charles E. Mack, the petitioner, H. L. Fish and J. W. Haines, are the duly elected, qualified and acting regents of the state university.

To this petition respondent demurred, upon the ground that the complaint or information did not state facts sufficient to constitute a cause of action against the defendant, and that it appears from the complaint that the defendant is a duly qualified and legally acting regent of the state university. The demurrer was sustained and the relator failing to amend his pleading the action was dismissed, and from the order sustaining the demurrer and dismissing the action the relator appeals. As the matter was submitted to us on the question of the validity of the law of 1891, under which said respondent is acting, we shall pass upon that question alone. Objection was made in the course of the argument as·to the propriety of allowing the relator to prosecute this action in his own name, but we think he can maintain the action in this form under section 3724, Gen. Stat., he being individually

responsible for all costs. The contention of the relator is, that the act of the legislature of March 19, 1891, under which the respondent claims the right to act as one of the regents, is unconstitutional, because it is in conflict with section 7 of article XI of the constitution. The act under consideration reads as follows: " The board of regents of the state university shall consist of three elective members, as now provided by law, and of the governor and attorney general, who shall be ex-officio members of said board."

Immediately after the approval of the above act by the governor, the respondent, who then was and still is, the duly elected, qualified and acting attorney general of the state of Nevada, qualified as such member of the board of regents, since which time he has been meeting with and acting as a member of the board.

The section of the constitution referred to reads as follows: " Sec. 7. The governor, secretary of state and superintendent of public instruction shall, for the first four years, and until their successors are elected and qualified, constitute a board of regents, to control and manage the affairs of the university and the funds of the same, under such regulations as may be provided by law. But the legislature shall, at its regular session next preceding the expiration of the term of office of said board of regents, provide for the election of a new board of regents and define their duties."

On the 5th of March, 1869, a law was approved by the governor providing for the election of regents, by the legislature in joint convention on the third Tuesday of the session; and they were so elected until 1887.

On the 7th day of February, 1887, an act of the legislature was approved by the governor, wherein it was provided that the governor, secretary of state and superintendent of public instruction should constitute the board of regents until the 1st of January, 1889, and until their successors were elected and qualified. The act then provided for the election of three qualified electors, at the next general election, to be voted for the same as other state officers, and when elected should constitute the board of regents, and fixed their term of office; under this act J. W. Haines is the hold-over regent, and at the general election held in November, 1892, Charles E. Mack, the relator, and H. L. Fish were elected as regents and qualified, and entered upon the discharge of their duties as required by law.

It is the duty of courts, whenever called upon to pass on the unconstitutionality of an act of the legislature to approach the question with great caution, and before the act should be declared void it should appear that there has been a clear and palpable violation of the constitution; for the presumption is that every statute, the object and provisions of which are among the acknowledged powers of legislation, is valid and constitutional, and such presumption is not to be overcome unless the contrary is clearly made to appear. Shaw, C. J., in the case of *Wellington* v. *Petitioners,* 16 Pick. 95, in considering the question whether or not a certain act of the legislature was valid, said: " The delicacy and importance of the subject may render it not improper to repeat what has been so often suggested by courts of justice, that when called upon to pronounce the invalidity of an act of the legislature passed with all the forms and solemnities requisite to give it the force of law, courts will approach the question with great caution, examine it in every possible aspect, and ponder upon it as long as deliberation and patient attention can throw any new light upon the subject, and never declare a statute void, unless the nullity and invalidity of the act are placed, in their judgment, beyond reasonable doubt "

Applying these principles laid down with so much care and adhered to by the courts of last resort of other states, and not forgetting that the presumption is always in favor of the validity of the law; and it is only when manifest assumption of authority appear that the judicial power can or will refuse to execute it, for legislative acts are to be upheld unless there is a substantial departure from the organic law, yet in connection with the above principles there is another principle or rule that courts strictly adhere to, and that is to follow precedents and not to disturb that which has been accepted as a correct interpretation of a constitutional provision for a great number of years, without it is made to appear that the decision on the question then under consideration was erroneous and should not be followed. The rule of *stare decisis* means that when a construction has been once placed upon a constitutional provision by a judicial decision, it forms a precedent for the guidance of courts in all similar cases. This rule should be strictly followed, for by a strict adherence to it, it preserves the certainty, the stability and symmetry of our jurisprudence. The supreme court of the

United States, as a general rule, follows the decisions of the highest courts of the several states upon the construction of their constitutions and laws, unless they conflict with or impair the efficacy of some provision of the federal constitution or of a federal statute. (*Louisville & Railroad Co.* v. *Mississippi*, 133 U. S. 591; 27 American Decisions, 631.)

When a word or paragraph used in a constitution has been interpreted, and its meaning determined by deliberate judicial decision, and has been in operation for twenty-three years, as is the fact in relation to the word "elected," used in our constitution, and the meaning of the word has been followed and acquiesced in by the courts and people of the state, we should not disturb such decision.

In the case of *Clarke* v *Irwin*, 5 Nev. 121, Whitman, J., speaking for the court said: "When words are used in a constitution, unless so qualified by accompanying language as to alter their ordinary and usual meaning, they must be received in such meaning. The word 'elected,' in its ordinary signification, carries with it the idea of a vote, generally popular, sometimes more restricted, and cannot be held the synonym of any other mode of filling a position."

That case was decided in 1869, and although the court held that the constitution provided that the county officers should be elected by the people, yet the legislature having created the county of White Pine an emergency existed, and that that body had the power to name the county officers for the purpose of putting the new system in motion and providing for the election of their successors at the next general election.

Without such power was vested in the legislature no new county could be organized, for officers must be appointed to make the necessary arrangements for holding the election within the boundaries of the newly created county. In the case of the *State* v. *Arrington*, 18 Nev. 412, the question before the court was as to the power of the legislature to extend the terms of offices of the then incumbents of the county assessor's office from two to four years; in passing upon the question the court adhered to the meaning of the word "elected" as defined by the court in *Clark* v. *Irwin*, but the court held that "there was no emergency or special occasion calling for extraordinary action on the part of the legislature;" and that portion of the

act extending the terms of the incumbents to four years was held to be unconstitutional.

The respondent admits that "under the constitution the office of regent must be filled by an election by the people, but contends that the act in question created two new offices of regent, which as soon as created were vacant and proper to be filled provisionally by the legislative appointment, in order to set the new system of the state university government and discipline in operation."

By his admission that the constitution requires that the regents shall be elected by the people, it seems to us that the respondent virtually admits that he is not entitled to discharge the duties of regent; because by such admission he takes himself without the rule as laid down in the case of *Clark* v. *Irwin*, and falls within the rule as announced in *State* v. *Arrington;* in this by increasing the number of regents from three to five the legislature was not inaugurating a new system of government for the university, but merely increasing the number of regents who were to administer the affairs of an institution which had theretofore been controlled by three; and there is nothing contained in the act of 1891 that would indicate or lead us to the conclusion that there was any emergency existing at the date of the passage of the act, whereby it became necessary that the increased number should be inducted into office prior to their election by the people.

The same rule does not apply in the case under consideration that should be invoked in cases where the legislature had created new counties, new judicial districts or new state institutions.    The act of 1891 did not create a new system, it merely created two new officers to assist three others who had been elected the people to conduct the affairs of an institution which had been established and the system inaugurated years prior to 1891.

When new counties or judicial districts are created, or new state institution established, it becomes necessary that officers should be appointed to organize and put in motion the county government, the judge to preside in the district, and the officers to control the affairs of the institution under such laws as may be enacted for the government of the same; under these conditions an emergency exists and the legislature possesses the power to make provisional appointments to put the new system in motion.

We conclude therefore that the respondent is not entitled to discharge the duties of regent of the state university, by reason of the fact that he has not been elected to that position in the manner provided for by the constitution, or under the act of 1887, and the judgment of ouster must be entered.

As to whether the persons who shall be elected governor and attorney general, at the general election to be held in the month of November, 1894, will be entitled to act as regents of the state university, it is unnecessary for us to decide. All that we are called upon to decide is whether the respondent is legally entitled to discharge the duties of regent at this time, and we say he is not.

It follows that the court erred in sustaining the demurrer to the petition, for which the judgment of the district court is reversed, with instruction to said court to overrule the demurrer, and for such further proceedings not inconsistent with this opinion.

BIGELOW, J., concurring.

As we have concluded that the legislative appointment under which the respondent now exercises the office of regent is null and void by reason of conflict with the constitution, it is unnecessary to pass upon any other question.

He admits, what is clearly the case, that eventually all the regents must be elected by the people, but he claims that the act of 1891 (Stat. 1891, p. 77) appointing him, merely increases the number of regents from three to five, which the legislature had the right to do; that at the election in 1894, when the people elect a new attorney general, they will also elect, ex-officio, a regent, which will comply with the requirements of the constitution, and that the present appointment for the balance of his term of office, which it will be noticed extended over the election of 1892, is simply a temporary one for the purpose of putting the new system into operation, which, under the case of *State ex rel. Clarke* v. *Irwin*, 5 Nev. 111, the legislature had power to make.

Where, as in that case, a new county is organized, or as in *State ex rel. Rosenstock* v. *Swift*, 11 Nev. 128, a municipal corporation is created, it is necessary that in some manner a set of officers should be provided prior to the holding of an election, for there can be no election without officers to hold it.

Although without incumbents, the offices have been created, and this presents the ordinary situation of a vacant office. Notwithstanding the language of the constitution that an officer shall be elected by the people, which must be generally followed, it could hardly have been the intention that this should apply under any and all circumstances, for it takes time to call an election; and it would often block the wheels of government for an office to remain vacant until an election can be held and the result ascertained, even if one could be held at all without the office being first filled. (*State ex rel. Bull* v. *Snodgrass*, 4 Nev. 524; *Peo.* v. *Fisher*, 24 Wend. 219; *Peo.* v. *Snedeker*, 14 N. Y. 52.) This court concluded that the cases of *State* v. *Irwin, supra,* and *State* v. *Swift, supra,* presented some of the excepted instances, and the appointments there questioned were accordingly upheld. But as these exceptions are contrary to the language of the constitution, and only to be justified by the exigencies of the situation, this principle should not be extended farther than to the cases that reason forces us to conclude the constitution makers did not intend to be brought within the general rule, that the incumbent of the office must be elected. The exception should not be extended to the creation and filling of unnecessary vacancies, nor should the appointments so authorized be allowed to extend beyond the time when, in the regular course of elections, they can be filled by the people.

In the case of *State, ex rel. Perry* v. *Arrington*, 18 Nev. 412, the legislature of 1883 had provided that the terms of the assessors, which were then but two years, should be extended to four years; that the first election for assessor under this law should take place in 1886, and that the terms of the assessors then in office should be extended over the next election and up to January, 1887. It was sought to justify this legislative appointment upon the same ground urged here, that the legislature had the power to make it for the purpose of putting the new system into operation. The court however said, speaking of the cases already cited here: " We do not deny that the legislature may make provisional appointments if necessary, in order to put a new system into operation. Offices that must be permanently filled by an election, in cases of emergency, may be provided for temporarily by other means. The constitutional mandate does not apply to such exceptional cases. *Clark* v. *Irwin* shows that certain parties were named as county officers

in the bill creating the county of White Pine, to hold until the next general election. Irwin was designated as sheriff. The court held that the statute did not violate that part of the constitution which requires county officers to be elected by the people, because the office was filled only temporarily by the legislature until the next general election, and that the constitutional mandate did not apply to cases of emergency or special occasion. Such is the undoubted law, but it does not apply to the statute under consideration. In this case there was no emergency or special occasion calling for extraordinary action on the part of the legislature. The several incumbents of the office had been elected for two years, under a general law which required their successors to be elected by the people at the general election in 1884. Before the expiration of the term for which they were elected there would be a general election at which their successors could be elected in the manner and form provided by the constitution. If it was desirable to change their terms of office from two to four years, still there was nothing to hinder the election of their successors at the general election in 1884."

This language undoubtedly states the law, and is decisive of the case in hand. The doctrine of *State* v. *Irwin* does not apply here, because, first, there was no special occasion or emergency that justified or called for the legislative appointment of a new regent. There was a board of regents already in existence, presumably at least, able and willing to discharge the duties devolving upon them. If it was proper, and the legislature had the power to increase the number of regents, still there could have been no crying necessity for its being done before the next election. The affairs of the university could in the mean time be attended to by officers elected by the people, and whom they must have thought when they elected them, fully capable of so doing. It is not the case of an office that must be filled before the public business can go on. Secondly—No such special occasion or emergency could possibly exist longer than to the next election, at which time the office could be regularly filled by the people. This must certainly be so, unless we admit that there is some peculiar connection between the office of attorney general and that of regent that makes it necessary that each should be filled by the same incumbent, which there is no reason to suppose is the case.

To hold otherwise would be to make the university the foot ball of the legislature. If this appointment, extending over nearly four years, is valid, there is nothing to prevent the next legislature, if the composition of the board does not suit them, from making all the other state officers ex-officio regents. There is no reason to suppose that the power once admitted would stop with them, but might extend to county officers and to others. But if, in accordance with the requirements of the constitution, we hold that the regents must be elected by the people, this places the institution upon a sure and safe foundation that should eventually lead to the careful scanning of candidates and the election of the best men for the positions.

I concur in the judgment.